MILTON J. HUNTER *vs.* MIDWEST COAST TRANSPORT, INC.,
& another.[1]

Suffolk. December 4, 1986. — August 18, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Workmen's Compensation Act*, Action against third person, Recovery from
third person, Reimbursement of insurer.

With respect to a third-party recovery by an employee whose injuries are
covered by the Workmen's Compensation Act, G. L. c. 152, attorney's
fees and costs paid by the employee, as well as the reimbursement to
the insurer for the amount of compensation already paid, are to be
deducted from the total third-party recovery for the purpose of determin-
ing the amount of "excess" to be offset against future compensation paid
by the insurer. [782-784]
A workmen's compensation insurer is to pay its share of attorney's fees
and costs attributable to an employee's third-party recovery by paying
a proportionate fraction of the employee's claim for benefits subsequent
to the third-party recovery until the total amount of claims equals the
statutory "excess." [784-785]

QUESTION OF LAW certified to the Supreme Judicial Court
by the United States District Court for the District of Massachu-
setts.

*Daniel C. Crane* for the plaintiff.

*Gary D. Buseck* (*Richard L. Neumeier* with him) for the
defendants.

O'CONNOR, J. This case presents the following question
certified to this court by the United States District Court for
the District of Massachusetts: "With respect to third-party re-
coveries by employees whose injuries are covered by [the work-
ers' compensation act, G. L. c. 152], does Massachusetts law
require that the attorney's fees and costs paid by an employee,

---

[1] Transportation Insurance Company.

as well as the amount of compensation already paid by the insurer, be deducted from the total recovery for the purpose of calculating the amount of the 'excess' to be used as an offset against future compensation payments by the insurer?"[2] We answer the certified question in the affirmative. Also, in the interest of a complete resolution of this case, we advise that Massachusetts law requires the insurer (including a self-insurer) to pay its share of attorney's fees and cost by paying a fraction of

---

[2] General Laws c. 152, § 15, as most recently amended by St. 1986, c. 662, § 5A, provides as follows: "Where the injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof, the employee shall be entitled, without election, to the compensation and other benefits provided under this chapter. Either the employee or insurer may proceed to enforce the liability of such person, but the insurer may not do so unless compensation has been paid in accordance with sections seven, eight, ten A, eleven C, twelve or nineteen nor until seven months following the date of such injury. The sum recovered shall be for the benefit of the insurer, unless such sum is greater than that paid by it to the employee, in which event the excess shall be retained by or paid to the employee. For the purposes of this section, 'excess' shall mean the amount by which the total sum received in payment for the injury, exclusive of interest and costs exceeds the compensation paid under this chapter. The party bringing the action shall be entitled to retain any costs recovered by him. Any interest received in such action shall be apportioned between the insurer and the employee in proportion to the amounts received by them respectively, exclusive of interest and costs. The expense of any attorney's fees shall be divided between the insurer and the employee in proportion to the amounts received by them respectively under this section. Except in the case of a settlement by agreement by the parties to, and during a trial of, such an action at law, no settlement by agreement shall be made with such other person without the approval of either the board, the reviewing board, or the court in which the action has been commenced after an opportunity has been afforded both the insurer and the employee to be heard on the merits of the settlement and on the amount, if any, to which the insurer is entitled out of such settlement by way of reimbursement, which amount shall be determined at the time of such approval. In the case of a settlement by agreement by the parties to and during a trial of such an action at law, only the justice presiding at the trial shall have and exercise, relative to the approval of such settlement by agreement and to the protection of the rights and interests of the employee, the powers granted in the preceding sentence. Nothing in this section, or in section eighteen or twenty-four shall be construed to bar an action at law for damages for personal injuries or wrongful death by an employee against any person other than the insured person employing such employee and liable for payment of the compensation provided by this chapter for the employee's personal injury or wrongful death and said insured person's employees."

the employee's future claims for benefits as those claims arise until the total amount of claims equals the statutory "excess." The fraction of each claim to be paid by the insurer is the same ratio that the plaintiff's attorney's fees and costs bear to the amount of the total recovery from the third party. When the total amount of these claims equals the statutory excess, the insurer's obligation to make full compensation payments resumes.

In this diversity action pending in the Federal court, the plaintiff seeks a declaratory judgment as to the nature of the defendants' obligations to bear a share of the attorney's fees that the plaintiff incurred in bringing and settling a third-party tort action. The parties stipulated as follows. In November, 1980, the plaintiff was injured while driving a truck in the course of his employment by the defendant Midwest Coast Transport, Inc. ("MCT"). As a result, the plaintiff became a quadraplegic. Pursuant to his rights under the Massachusetts workers' compensation act, the plaintiff sued various third parties, not including the present defendants, and obtained a judgment of $3,000,000. Notices of appeal were filed. In October, 1984, the plaintiffs and the defendants in the tort action, as well as MCT, entered into a settlement agreement as a result of which a judgment was entered for the plaintiff in the amount of $3,000,000,[3] and the appeals were voluntarily dismissed.

From the date of the accident until September, 1984, when it ceased making compensation payments, MCT had paid the plaintiff $230,368.82 for his medical and nursing care and attendance and weekly compensation benefits. MCT was self-insured for payments up to $250,000, and carried an excess policy with the defendant Transportation Insurance Company ("TIC"). Pursuant to the settlement agreement, and in conformity with G. L. c. 152, § 15, the plaintiff paid MCT $149,524.04,

---

[3] The parties to the tort action agreed to a structured settlement under which total payments will exceed $3,000,000. The United States District Court judge referred to the settlement amount as $3,000,000, and the parties have adopted that description. We assume that they refer to the present value of the stream of payments due under the settlement agreement.

reimbursing MCT for the $230,368.82 it had paid the plaintiff less $76,789.61 attorney's fees and $4,055.17 costs. The attorney's fee was one-third of $230,368.82. The parties also stipulated that, from October 6, 1985, to February 5, 1986, the plaintiff incurred further expenses of $45,776.78 for medical and nursing care and attendance, and that he would continue to incur such expenses as a result of his injuries.

The certified question has arisen in connection with a United States District Court judge's consideration of cross motions for summary judgment. It is apparent from the judge's memorandum that his objective is to obtain from this court a declaration that will be dispositive of this case, and that he has concluded that our answer to the certified question will be dispositive. We answer the certified question, and a second, related question because it is our view that answering the certified question alone will not be sufficient to meet the District Court judge's objective.

Under G. L. c. 152, § 15, the plaintiff is entitled to the "excess" of his third-party recovery over the $230,368.82 MCT paid to the plaintiff. Section 15 makes no express provision regarding an insurer's right to offset any part of such an "excess" against its liability for workers' compensation payments of medical and nursing expenses incurred after the plaintiff's recovery from the third party. However, that right was established by this court in *Richard* v. *Arsenault*, 349 Mass. 521, 524-525 (1965), in which we concluded that "full effect will be given to the general policy against double recovery and the reimbursement provisions of § 15 by treating the excess as an offset against future compensation payments."

In *Richard* v. *Arsenault*, we did not address the question we are called on to answer now. In *Richard*, we did not consider, as we must here in order to answer the certified question, whether the excess to be treated as an offset is the statutory excess, that is, "the amount by which the total sum received in payment for the injury, exclusive of interest and costs exceeds the compensation paid under [G. L. c. 152]," as the defendants contend, or, rather, the statutory excess less the plaintiff's attorney's fee and costs, as the plaintiff contends.

The question in *Richard* was whether the insurer was entitled to any offset. The parties had agreed on how the offset should be computed if the insurer was entitled to one.

Here, as the Federal judge observed, "[t]he reason [the] plaintiff seeks an immediate or eventual reallocation of responsibility for his attorney's fees is evident. Under the system defendants contend is correct, defendants receive a credit against their liability for future compensation equal to the amount of plaintiff's total recovery less the amount returned to the insurer. Plaintiff, however, must pay his attorney's fees out of this 'excess.' Defendants' credit [would exceed] plaintiff's net recovery by the amount of plaintiff's share of the attorney's fees. Consequently, plaintiff's net excess recovery will be exhausted before defendants' credit. Thus, plaintiff seeks to avoid this result either by having defendants pay one-third of his future medical bills as they are incurred, until those bills equal the amount of his gross excess, or by reducing [the defendants'] credit against future liability payments by the amount of plaintiff's share of his attorney's fees so that defendants' net credit is equal to plaintiff's net excess" (footnotes omitted). From the plaintiff's perspective, at stake in the instant case is the insurer's potential liability for nearly $1 million in compensation benefits.

Our holding in *Richard* was expressly grounded on concerns about fairness, especially the "principle underlying the workmen's compensation law that there shall not be double recovery for injury — once by way of compensation and once by way of damages." *Id.* at 524, quoting *McDonald* v. *Employers' Liab. Assurance Corp.*, 288 Mass. 170, 174 (1934). Deduction of the employee's share of attorney's fees for the third-party action from the statutory "excess" for purposes of calculating the insurer's offset does not result in the employee's receiving double recovery for injury. His net recovery will equal the insurer's offset, and any compensation benefits already paid will have been reimbursed pursuant to the terms of § 15. Nor is such a deduction unfair to the insurer, who remains potentially benefited by the reimbursement and offset to the full extent of the net recovery in the third-party action. By contrast,

the rule proposed by the defendants creates the possibility that the employee's net recovery will be exhausted before the insurer's obligation to make compensation payments resumes. That possible financial gap in the instant case is nearly $1 million. If that possibility comes to fruition, the plaintiff will be in worse position than he would have been in if he had not brought the third-party action. We conclude that the plaintiff's attorney's fees and costs, as well as the reimbursement to the insurer for compensation paid before the settlement of the third-party action, must be deducted from the third-party recovery to determine the insurer's offset. We answer the certified question, "yes."

Having decided that the insurer's offset should reflect the fees and costs of the third-party action, we next consider the parties' arguments concerning the appropriate method for implementing that decision. As the judge recognized, there are two feasible alternatives. One is to compute the insurer's offset by deducting the plaintiff's attorney's fees and costs from the statutory excess so that the offset equals the plaintiff's net recovery. Under that approach, the insurer here would not be required to make any payments until the plaintiff's future claims (claims after the third-party recovery) reach $1,846,420.79, if indeed they ever do. If and when that point is reached, the insurer will be obliged to pay further compensation claims in full. The other alternative is to require the insurer to pay a percentage of each claim as it is submitted equal to the ratio the total attorney's fee and costs bears to the total third-party recovery. In that way, the share of the attorney's fee and costs paid by the insurer is proportionate to the benefit it receives. The first approach clearly favors the insurer since, under that approach, the insurer has the use of the money for the attorney's fees and costs until the future compensation claims equal the third-party net recovery. Furthermore, if the plaintiff dies before that figure is reached, the insurer will entirely escape having to pay legal fees.

The defendants argue that the second approach is unfair to insurers, that it increases the probability of a double recovery to the employee or his estate, and that it creates a costly and

unnecessary administrative burden for insurers. We recognize that the second approach may in some circumstances yield a result that is less than perfect, but we are persuaded that it is preferable to the first approach. Regardless of which approach we adopt, insurers will be required to keep records of the diminution of their offset as claims are submitted. The additional simple arithmetic required by the second approach does not impose an undue burden on insurers. Also, we perceive no possibility that an employee will receive a double recovery as a result of the second approach. What the defendants characterize as a double recovery is nothing more than the employee's being relieved of the burden of attorney's fees for that part of a third-party recovery which ultimately redounds to the benefit of the insurer. Nor is there unfairness to an insurer in a system that reimburses the insurer for benefits paid before a third-party recovery has been effected, and credits it with an offset against subsequent claims, but requires it to pay the legal freight for the benefits it realizes. Under the first approach, that result will not be attained except when the entire statutory excess is exhausted. The over-all balance of equities is not shifted by the fact that the employee receives the third-party recovery "up front," while the benefit to the insurer from the third-party action accrues over time.

We answer the certified question "yes," and we advise that Massachusetts law requires a workers' compensation insurer to pay its share of attorney's fees and costs attributable to third-party recovery by paying a proportionate fraction of the employee's claims subsequent to the third-party recovery as those claims arise until the total amount of claims equals the statutory "excess."