## ESTHER PINA'S CASE.

No. 95-P-844.

Suffolk. February 14, 1996. - May 3, 1996.

Present: DREBEN, GILLERMAN, & GREENBERG, JJ.

*Workers' Compensation Act,* Settlement agreement, Interest, Reimburse-
ment of insurer, Recovery from third person, Compensation.

A reviewing board of the Department of Industrial Accidents erred in
  concluding that a settlement agreement between an injured worker and
  an insurer with respect to workers' compensation benefits for a 1975
  injury that was approved by a Superior Court judge in 1983 should be
  reformed to identify and quantify the interest component so as to reduce
  the worker's "statutory excess" and entitle her to earlier resumption of
  full compensation benefits for later incurred medical expenses related to
  the original injury. [391]
A reviewing board of the Department of Industrial Accidents erred in
  concluding that payments by Medicare to an injured worker for later
  incurred medical expenses related to the original injury reduced the
  amount of the worker's "statutory excess" subject to the insurer's right
  of offset and thus entitled the worker to earlier resumption of full
  compensation benefits. [391-393]

APPEAL from a decision of the Industrial Accident Review-
ing Board.

The case was reported by *Porada,* J.

*Allen Whitestone (Jean M. Shea* with him) for the insurer.

*William H. Shaughnessy (James A. McDonald* with him)
for the plaintiff.

GILLERMAN, J. As a result of injuries she sustained when
leaving work on January 3, 1975, the plaintiff (Pina) received
workers' compensation benefits (as of December 12, 1980:
ninety-five dollars weekly for permanent and total incapacity)
from her employer's insurer, Liberty Mutual Insurance
Company (Liberty). Pina also brought a third-party action in
the Superior Court against McGill Development Corporation

and recovered a judgment in her favor in that action. See *Pina* v. *McGill Dev. Corp.*, 388 Mass. 159 (1983). Out of the proceeds of that award Liberty was reimbursed the benefits it previously had paid to Pina. See *Pina* v. *Liberty Mut. Ins. Co.*, 388 Mass. 1001 (1983). See also note 3, *infra*.

Subsequently, Pina incurred additional medical expenses related to the original injury, and those expenses were paid by Medicare, not Liberty. Pina then initiated proceedings in the Department of Industrial Accidents (department) claiming that the payments by Medicare reduced the amount of her "statutory excess," see note 3, *infra*, a claim that Liberty contested. An administrative judge of the department rejected Pina's claim, but the reviewing board, see G. L. c. 152, § 11C, reversed the decision of the administrative judge. Liberty appealed to a single justice of this court who reported the case to a panel. See G. L. c. 152, § 12(2).[1] We agree with the administrative judge.

The material facts, which are not in dispute, are these. On April 4, 1983, a judge of the Superior Court, acting under the provisions of G. L. c. 152, § 15,[2] approved the agreement to settle all outstanding claims among Pina, Liberty, and McGill Development Corporation, as follows. McGill agreed to pay $215,371.92 in full settlement of Pina's claim against it. From the gross settlement amount, Pina's attorney received a fee of $71,790, and $2,900 as reimbursement for prepaid litigation expenses, and Liberty received $70,000 as reimbursement of the benefits it paid to Pina. The balance of $70,681.92 was paid to Pina.

Immediately after the approval of the settlement agreement, Liberty terminated all benefit payments to Pina, but following the decision of the Supreme Judicial Court in *Hunter* v. *Midwest Coast Transp., Inc.*, 400 Mass. 779, 784

[1]General Laws c. 152, § 12(2), provides that appeals from a decision of the reviewing board shall be filed with the Appeals Court. Initially, workers' compensation cases filed in this court are decided by a single justice unless, as here, the single justice reports the case to a panel of this court. See Appeals Court Standing Order Governing Appeals From the Industrial Accident Reviewing Board (1990).

[2]After the favorable award in the third-party action, Pina and Liberty each commenced an action in the Superior Court seeking a final judgment regarding the proper disposition of the proceeds of the third-party action. Under § 15, settlement agreements must be approved by the reviewing board or by the court in which the third-party action was commenced.

(1987), it resumed payment of one-third of Pina's permanent and total incapacity benefits ($31.67).[3]

Further — and now to the matter at hand — after the settlement agreement, Pina incurred medical bills which were related to her original injury,[4] but Medicare, not Liberty, paid those bills. In her proceedings before the department, she sought reinstatement of her full benefits based on the claims that (1) the amounts paid by Medicare should be applied to reduce the amount of her statutory excess subject to Liberty's right of offset, and (2) the gross settlement amount of $215,371.92 in fact included interest in the amount of $100,000 reducing the statutory excess by the same amount.[5] These two adjustments would exhaust her statutory excess, Pina argued, and entitle her to the immediate resumption of full compensation payments.

The administrative judge of the department concluded that the payments by Medicare did not reduce Pina's statutory excess because Medicare, not Liberty, had paid the post-

---

[3]Under G. L. c. 152, § 15, sums recovered by an injured employee in a third-party action shall be distributed to the workers' compensation insurer to the extent of the benefits paid to the employee; the excess (the so-called "statutory excess") is retained by the employee. In *Richard* v. *Arsenault*, 349 Mass. 521, 524-525 (1965), the Supreme Judicial Court permitted the insurer to offset, to the extent of the statutory excess, amounts due the employee on account of *future* compensation claims arising out of the original injury. The purpose was to assure the continuance of the insurer's right of reimbursement and to preclude double recovery by the employee.

In *Hunter*, *supra* at 784, the court decided that the insurer's offset should bear its share of the fees and costs paid by the employee in the third-party action. Thus, as to all claims for future benefits arising out of the original injury, the insurer is obliged to pay that fraction thereof which the employee's fees and costs in the third-party action bears to the total recovery in that action, and to that extent the insurer's offset is less than the employee's statutory excess. See *Percoco's Case*, 418 Mass. 136, 139 (1994). In this case that fraction was one-third, and Pina became entitled to $31.67 (one-third of $95) in weekly benefit payments. In this manner, Liberty's offset is reduced by its share of the fees and expenses of Pina's counsel, and when Pina's future claims equal the statutory excess, the insurer must resume full compensation benefits. See *ibid.*

[4]The decision of the board recited that, at oral argument, Liberty, "for the first time, raised the defense of the . . . causal relationship" of Pina's medical bills to her original injury. The board found that this claim had not been raised or decided below, and therefore the claim had been waived. Liberty's brief on appeal makes no argument to the contrary.

[5]Under G. L. c. 152, § 15, interest is excluded in the calculation of the statutory excess.

settlement medical bills incurred by Pina. The administrative judge also concluded that because of the finality of the April, 1983, settlement agreement — which made no reference to an interest component of $100,000 — the statutory excess should not be reduced by the claimed amount of interest.

Pina appealed the decision of the administrative judge to the reviewing board (the board); our review is limited to the board's decision. See *Percoco's Case*, 418 Mass. 136, 138 (1994). The board concluded that the administrative judge had erred by failing to reduce Liberty's offset rights by the amounts paid by Medicare and vacated the decision of the administrative judge.

The board also concluded that the April, 1983, settlement in the Superior Court did not take account of the interest component of the settlement, and therefore the statutory excess must be recalculated to eliminate the interest component. The board vacated the decision of the administrative judge and remanded the case to her for further proceedings, but stayed the remand order pending reformation by the Superior Court of the settlement agreement to conform to the opinion of the board.

*Discussion.* First, as to the "interest component" of the settlement agreement, the record before us includes a stipulation by the parties that an agreement for judgment, incorporating the material terms of the April, 1983, settlement agreement, "will be entered [in the case brought by Pina against McGill Development Corporation.]" There is no reason to believe — and none advanced by Pina — that a final judgment was not entered in accordance with the agreement of the parties, or that relief from that judgment may be obtained by Pina over the objection of Liberty. See Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974). Thus the stipulation by the parties must remain as agreed upon, and the board's conclusion that the settlement agreement should be revised to identify and quantify the interest component (which then is to reduce Pina's statutory excess) is erroneous.

There remains the question whether Pina's statutory excess — and Liberty's corresponding offset rights — is to be reduced by the amounts paid by Medicare.

Pina's statutory excess is subject to reduction for the purpose of reimbursing Liberty amounts Pina received from Liberty on account of compensation and other benefits provided by Liberty under the provisions of c. 152. See note

3, *suprá*. See also *Percoco's Case*, 418 Mass. at 141 (the cost of living adjustment provided by G. L. c. 152, § 34B, is a "benefit" paid by the insurer under c. 152 and therefore is subject to the insurer's offset rights under § 15). This conclusion is derived from "the underlying principle of § 15 [which is] the prevention of double recovery [by the employee] — 'once by way of *compensation* [paid by the employer or its insurer] and once by way of damages' " (emphasis supplied). *Ibid.*, quoting from *Richard* v. *Arsenault*, 349 Mass. 521, 524 (1965). Pina's recovery from a third-party source, Medicare, is neither "compensation" nor any other "benefit" paid by Liberty under c. 152, and thus is not considered in determining whether Pina received a prohibited double recovery, or whether Pina's statutory excess is reduced pro tanto.

In *Brown* v. *Leighton*, 385 Mass. 757 (1982), the injured employee recovered a judgment against the third-party tortfeasor, and thereafter sued his employer who was not insured as required by c. 152. The employer conceded liability, but argued that it was entitled to a credit to the extent of the plaintiff's recovery against the third party. Reversing the trial judge, the court said, "Section 15 clearly makes payment of compensation a condition precedent of any direct recovery by the insurer against a third party," *id.* at 759, and that the purpose of § 15 is to "give the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay." *Ibid.*, quoting from *Richard* v. *Arsenault*, 349 Mass. at 524. See also G. L. c. 152, § 38, as amended by St. 1986, c. 662, § 33 (in determining compensation claims under c. 152, "benefits derived from any other source than the insurer [shall not] be considered in such determination").[6] To hold otherwise would unfairly prevent Liberty from recapturing the full amount (subject to *Hunter* calculations) which it is entitled to recover as reimbursement for compensation and benefits paid to Pina, and it would

[6]Section 38 "was part of the original act, St. 1911, c. 751 . . . . [It] was designed to make sure that the employee would not lose the full advantage of any savings or insurance of his own and of any sick benefits or other benefits to which he might be entitled from such sources as fraternal orders, benefit associations, pension plans governmental or otherwise, and the like. In that field it should be broadly construed." *Mizrahi's Case*, 320 Mass. 733, 737 (1947). Contrast *Gould's Case*, 355 Mass. 66, 71 (1968) (benefits received by an employee under a voluntary, noncontributory disability plan provided by a self-insured employer are not protected by § 38; such benefits were not derived from a source other than the insurer).

permit Pina to retain, against future claims, that portion of her statutory excess which is equal to the payments made by Medicare — a form of double recovery.

The board appears to have relied on the fact that under the Medicare statute, 42 U.S.C. § 1395y(b)(2)(A) (1994), Medicare payments "may not be made . . . [where] (ii) payment has been made or can reasonably be expected to be made promptly . . . under a workmen's compensation law . . . ." While any payment under the circumstances just described "shall be conditioned on reimbursement" to the United States (subparagraph [B][i]), and while "the United States may bring an action" to recover such a conditional payment, including double damages under certain circumstances (subparagraph [B][ii]), and while, in addition, the United States is, with regard to any such payment, subrogated to the rights of the individual under the workers' compensation law (subparagraph [B][iii]), there is no indication in the record that the United States intends either to seek reimbursement from Liberty or to be subrogated to the rights of Pina against Liberty.[7]

There is no reason, then, to disturb the existing calculation of Pina's statutory excess or of Liberty's right of offset. If, at some future date, the United States obtains reimbursement from Liberty directly or via subrogation, it may become necessary to consider the effect of such reimbursement, but those events are not before us.[8]

For these reasons, the decision of the reviewing board is reversed.

*So ordered.*

---

[7]Quite to the contrary, it appears from the record that on August 9, 1993, the administrative law judge in this case wrote Blue Cross Blue Shield, the agency that administers the Medicare program in Massachusetts, inviting an amicus brief on the "novel legal issue regarding the relationship between medicare, tort settlement, and workers' compensation benefits." There is additional correspondence regarding the same subject, but so far as appears in the record, the United States has exhibited no interest in these proceedings.

[8]Compare G. L. c. 152, § 46A (if an accident or health insurer pays benefits on claims then or thereafter determined to be covered by workers' compensation insurance, the accident and health insurer may at any time before an award of workers' compensation benefits file a claim for reimbursement out of the award).