## CATHERINE BARBOSA'S CASE.

No. 97-P-2065.

Suffolk. February 4, 1999. - July 7, 1999.

Present: WARNER, C.J., KAPLAN, & KASS, JJ.

*Workers' Compensation Act,* Action against third person, Recovery from third person, Reimbursement of insurer.

A reviewing board of the Department of Industrial Accidents correctly concluded that a self-insurer is required to make weekly payments on account of litigation costs (*"Hunter* payments," *Hunter* v. *Midwest Coast Transp., Inc.,* 400 Mass. 779, 785 [1987]) as a fixed percentage of the injured employee's weekly permanent disability benefit, as that benefit is adjusted periodically by a cost of living adjustment factor. [239]

APPEAL from a decision of the Industrial Accident Reviewing Board.

*Patricia A. Costigan* for the employer.

*Paul M. Moretti* for the employee.

KASS, J. On January 16, 1981, Catherine Barbosa injured her right hand in an industrial accident and received workers' compensation from her employer, Armstrong World Industries, Inc. (Armstrong), a self-insurer. She also recovered a judgment, inclusive of interest and costs, of $1,553,438.24 from Hopper Feeds, Inc., the manufacturer of the machine in which Barbosa caught her hand.

From that recovery, Barbosa was obliged by G. L. c. 152, § 15, to reimburse the self-insurer for workers' compensation payments made to her, and thereafter weekly workers' compensation payments were to be drawn from the remaining net proceeds of the judgment until those proceeds were exhausted. On its part, the self-insurer was to make *"Hunter"* payments[1]

---

[1]*Hunter* v. *Midwest Coast Transp., Inc.,* 400 Mass. 779, 785 (1987).

on a per week basis for its share of legal fees and costs incurred in Barbosa's action against Hopper Feeds, Inc. Those fees and costs amounted to 33.86 per cent of the recovery, requiring a $75.98 per week *Hunter* payment. (See discussion, *infra*.) The question posed by this appeal is whether the weekly *Hunter* reimbursement of litigation expenses remains fixed or is to be increased by a cost of living adjustment (COLA) factor.

As presented by the parties, the answer to this question lies in whether the *Hunter* payment is to be characterized as a benefit under G. L. c. 152, § 34A, and, therefore, subject to application of a COLA factor, or is a fixed reimbursement of litigation expenses. That classification, however, does not unlock the puzzle. Rather, we decide that, since the *Hunter* factor is a function of the benefit installments being credited against the third-party recovery "excess" (see discussion, *infra*), it rides with any increases in those benefit installments that result from application of a COLA factor. To illustrate, if COLA drives the weekly permanent and total disability benefit from Barbosa's original $224.40 to $235, the *Hunter* factor will go to $79.57 per week ($235 x .3386); if COLA drives the benefit to $250, the *Hunter* factor will go to $84.65 ($250 x .3386).

In explaining our conclusion we rehearse certain fundamentals of the workers' compensation system and then concentrate on the principles that underlie the *Hunter* decision.

Barbosa's accident left her with a permanent and significant limitation of the use of her right hand, loss of a finger, and a very weak grasp. See *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. 610, 612 (1989). After Barbosa obtained her recovery from Hopper Feeds, Inc., she reimbursed the self-insurer an amount, $95,286.95, which represented the total incapacity benefits the self-insurer to that point had paid to Barbosa, less litigation fees and costs allocable to those total benefits. This was in accordance with G. L. c. 152, § 15, which provides that either the employee or the insurer may proceed to enforce the liability of a third party who caused the industrial accident. First proceeds of any recovery in such an action are payable to the insurer. To illustrate, if the insurer has paid out $100,000 in benefits, the first $100,000 of the recovery from a third party found responsible for the accident is to be paid to the insurer, less litigation costs. The injured employee keeps what § 15 describes as the "excess," i.e., the amount recovered from the third party, exclusive of interest and costs, that exceeds

compensation the insurer has paid out. There is also, under the statute, an apportionment between the insurer and the employee of the interest received in such an action.[2] Section 15 further provides, "The expense of any attorney's fees shall be divided between the insurer and the employee in proportion to the amounts received by them respectively under this section." G. L. c. 152, § 15, as amended by St. 1971, c. 888, § 1.

Prior to Barbosa's third-party recovery, the self-insurer had paid to her the prescribed weekly benefit of $224.40. When the "excess" of Barbosa's third-party recovery was established, the per cent of the recovery representing attorneys' fees and costs (in this case, 33.86 per cent), continued to be paid to Barbosa in a weekly check in the amount of $75.98 (33.86 per cent of her prescribed weekly benefit). The balance of the prescribed weekly benefit (66.14 per cent, or $148.42), rather than being paid by the self-insurer, was treated as an offset against the "excess" in the hands of Barbosa. Thus, each week, the balance in her "excess" account was "drawn down" by $148.42.[3] The purpose of the statutory scheme is to avoid a double recovery for the industrial accident. See G. L. c. 152, § 15. *Richard* v. *Arsenault*, 349 Mass. 521, 524-525 (1965). *Hunter* v. *Midwest Coast Transp., Inc.*, 400 Mass. 779, 782-783 (1987).

The $75.98 weekly payment to Barbosa after the third-party action was the *Hunter* factor, i.e., the self-insurer's responsibility for attorneys' fees and litigation costs as to the amount it did not have to pay out of pocket to Barbosa because the benefit was being subtracted from the "excess." In time, the weekly benefits to be credited against the "excess" grew by application of the COLA factor, as to which see G. L. c. 152, § 34B. It was then that the current controversy between Barbosa and the self-insurer developed. Barbosa claimed that the COLA factor should be applied as well to the *Hunter* payments. The self-insurer argued, in effect, that as the legal fees and costs were a fixed amount, the pay-down should also be a fixed amount. For a period of five years, that controversy worked its way up and down within the Department of Industrial Accidents (DIA). Ultimately, on January 31, 1997, the DIA reviewing board

---

[2]In this case the aggregate interest, $785,538.24, exceeded slightly the amount of the underlying damages, $765,400.

[3]By way of illustration: if the balance of the "excess" when a payment was due was $900,148.42, the "excess," the amount against which the self-insurer drew in what was purely a bookkeeping entry, was reduced to $900,000.

decided that the weekly litigation payments of the self-insurer were not to be frozen at $75.98.

In the course of the peregrinations of the *Barbosa* case within the DIA, discussion revolved about whether the weekly litigation cost payments were or were not a benefit under G. L. c. 152, § 34A. That question was the focus of attention because the COLA factor prescribed by G. L. c. 152, § 34B, applies to benefits under G. L. c. 152, § 31 (not here applicable), and § 34A.

As we have suggested, the "benefits or not" inquiry was something of a wrong turn in terms of the theory which underlies *Hunter* v. *Midwest Coast Transp., Inc., supra.* The *Hunter* decision, see particularly 400 Mass. at 784-785, describes a "pay as you go" reimbursement of litigation costs by the workers' compensation insurer, or, as in this case, the self-insurer. It is simple fairness that as a workers' compensation insurer is spared the obligation of paying out a weekly benefit because that benefit obligation is discharged as credit against the "excess," the insurer reimburses the litigation costs attributable to each credit. When that weekly benefit rises because of application of the COLA factor, the insurer is spared a larger payment. Under *Hunter*, it then pays litigation costs that reflect the increased credit against the "excess" that the insurer is receiving. Were it otherwise, and the insurer's *Hunter* payments were held constant as COLA increases were applied, the draw-down against the "excess" would continue to rise as a per cent of the weekly benefit in relation to the *Hunter* payment, and, potentially, the injured worker would exhaust her "excess" account before the insurer had fully paid for its share of attorneys' fees and costs, a result not in keeping with *Hunter*. See *ibid.*

We read the decision of the DIA reviewing board to be in keeping with *Hunter*, i.e., to require Armstrong, the self-insurer, to make weekly payments on account of litigation costs that are 33.86 per cent of Barbosa's weekly permanent disability benefit, as that benefit has been and shall be adjusted from time to time by the COLA factor. So interpreted, the January 31, 1997, decision of the DIA reviewing board is affirmed.

*So ordered.*