MARY GAETA, administratrix,[1] *vs.* NATIONAL FIRE
INSURANCE COMPANY OF HARTFORD & another.[2]

Suffolk. February 6, 1991. - July 9, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Workers' Compensation Act*, Recovery from third person. *Insurance*, Insolvency of insurer. *Massachusetts Insurers Insolvency Fund*.

General Laws c. 175D, § 1 (2), did not relieve the Massachusetts Insurers Insolvency Fund from the obligation of reimbursing a workers' compensation insurer in the court-approved settlement of a third-party tort action brought under the provisions of G. L. c. 152, § 15. [594-595]

CIVIL ACTION commenced in the Superior Court Department on February 16, 1984.

The case was heard by *John C. Cratsley*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph C. Tanski* (*John P. Connelly* with him) for Massachusetts Insurers Insolvency Fund.

*Terrance J. Hamilton* (*Gregg S. Blackburn* with him) for National Fire Insurance Company of Hartford.

*Neil Sugarman*, for Mary Gaeta, was present but did not argue.

O'CONNOR, J. The plaintiff's deceased husband sustained personal injuries and died as a result of an elevator accident. He was in the course of his employment at the time. The plaintiff, who is the deceased's widow, received workers' compensation benefits in the sum of $105,495 from the defendant insurance company (National). She also brought a tort ac-

---

[1]Of the estate of *Anthony J. Gaeta*, III.

[2]Massachusetts Insurers Insolvency Fund, defendant intervener.

tion arising out of the same incident against Belle Elevator Company, Inc., and Michael B. Moskow in the Superior Court. Moskow had liability insurance with Integrity Insurance Company (Integrity). Because Integrity was insolvent, the intervener, Massachusetts Insurers Insolvency Fund (Fund), became obligated to satisfy Integrity's unpaid claims to the extent they were covered by G. L. c. 175D, § 5 (1) (*a*) (1990 ed.).

The tort action was settled before trial for $723,653.26. Belle Elevator Company, Inc., agreed to pay $299,148.26. Moskow agreed to pay $30,000 personally. His excess insurance carrier agreed to pay $200,000 and the Fund agreed to pay $194,505, which represented the difference between $300,000, the Fund's statutory maximum, and $105,495, which was the amount of the workers' compensation payments. National (the deceased's employer's workers' compensation carrier) was not a party to the tort action or a participant in the settlement negotiations.

General Laws c. 152, § 15 (1990 ed.), provides in relevant part that, when an employee is injured in the course of his employment, he not only is entitled to workers' compensation but he may also bring a tort action against responsible third parties. "The sum recovered shall be for the benefit of the [workers' compensation] insurer, unless such sum is greater than that paid by it to the employee, in which event the excess shall be retained by or paid to the employee." Furthermore, according to § 15, no pretrial settlement of a third-party tort action "shall be made . . . without the approval of either the board, the reviewing board, or the court in which the action has been commenced after an opportunity has been afforded both the [workers' compensation] insurer and the employee to be heard on the merits of the settlement and on the amount, if any, to which the insurer is entitled out of such settlement by way of reimbursement, which amount shall be determined at the time of such approval."

The parties to the agreement in settlement of the Superior Court tort action sought the court's approval of the agreement. Counsel entered an appearance for National and filed

an objection to the proposed settlement, contending that it was entitled under c. 152, § 15, to be reimbursed for the workers' compensation benefits it had paid the plaintiff. It was at this point that the Fund sought and received permission to intervene for the purpose of "oppos[ing] the objection" of National. As a result, the parties entered into an amended settlement agreement, approved by a judge in the Superior Court, which provided that $51,000 would be withheld from the settlement amount and placed in escrow pending judicial resolution of the question whether National is entitled to reimbursement under c. 152, § 15. Under the agreement, if National is entitled to reimbursement, the $51,000 is to be paid to National. Otherwise, the $51,000 is to be paid to the plaintiff. For purposes of this appeal, the rationale that led to the Fund's contribution of $194,505 to the settlement, and the rationale that prompted the parties to settle on $51,000 as the proper amount to be held in escrow, is unimportant. The only question now is whether National or the plaintiff is entitled to that money.

The procedural mechanism for obtaining judicial resolution of the question as to who is entitled to the $51,000 was the filing by National and the Fund of cross motions for summary judgment. National's motion was allowed, and the judge ordered that the $51,000 be paid to it. The plaintiff and the Fund appealed,[3] and we transferred the case from the Appeals Court to this court on our own initiative. Although our reasoning differs from that of the judge, we agree

---

[3]The Fund has filed a brief and a reply brief in this court. The plaintiff has expressed her support of the arguments presented in those briefs, but she has not filed a separate brief of her own.

We note that the Fund has not appealed from the judge's order approving the amended settlement agreement and the Fund does not seek to be excused from contributing its agreed $194,505 to the settlement "pot." The Fund's sole contention appears to be that the plaintiff, and not National, should be paid the $51,000 held in escrow. Because there is no suggestion that the Fund stands to gain or lose by virtue of our decision, we fail to understand the reason for the Fund's appeal and active involvement at this stage of the proceedings. However, no "standing" argument has been made by National, and we will consider the substantive issue.

with his disposition of National's motion and his order. Therefore, we affirm the judgment below.

As a result of the insolvency of Moskow's liability insurer, Integrity, the Fund became obligated to pay "covered claims" against Moskow. G. L. c. 175D, § 5 (1) (*a*) (1990 ed.). See *Ferrari* v. *Toto*, 383 Mass. 36, 37 (1981). "Covered claims" do not include claims for amounts due to insurers. G. L. c. 175D, § 1 (2). *Ferrari* v. *Toto, supra.* The Fund's position appears to be that, if National were to be paid the $51,000 held in escrow, the Fund's voluntary contribution to the total settlement would constitute payment of a claim for an amount due to an insurer contrary to the Fund's statutory mandate. The Fund concludes that, to avoid that result, the $51,000 held in escrow must be paid to the plaintiff. We disagree. The $51,000 payment pursuant to judicial order would not convert the Fund's contribution of $194,505 to a $723,653.26 settlement of a third-party tort claim into the payment of an amount due to an insurer. Nothing in *Ferrari* v. *Toto, supra,* which is relied on by the Fund but is significantly distinguishable from the present case on its facts, requires us to conclude that it would. Instead, as we pointed out in *Ferrari,* G. L. c. 175D was not designed to place a plaintiff in a third-party tort action, such as the plaintiff here, in a better position than she would have been in if the defendant's liability insurer had remained solvent. *Id.* at 37-38. Here, if Integrity had remained solvent and had contributed $194,505 to the settlement, the $51,000 held in escrow would very clearly belong to National under G. L. c. 152, § 15. Protection of the plaintiff, but no windfall in the form of double recovery, as argued for by the Fund, is called for by c. 175D.

*Judgment affirmed.*