CNA INSURANCE COMPANIES, INC. *vs.* MARIA SEMEDO-
ANACLETO & another.[1]

No. 94-P-416.

Suffolk. January 20, 1995. - September 25, 1995.

Present: WARNER, C.J., PERRETA, & DREBEN, JJ.

*Workers' Compensation Act*, Recovery from third person. *Insurance*, Workers' Compensation insurance, Insolvency of insurer. *Massachusetts Insurers Insolvency Fund*.

An insurance company, seeking reimbursement under G. L. c. 152, § 15, from an injured party and her attorney for workers' compensation benefits paid, was precluded from such reimbursement by the provisions of G. L. c. 175D, under which the injured party had received a settlement of her claims against a third party from the Massachusetts Insurers Insolvency Fund and the insured of the insolvent insurer. [274-276]

CIVIL ACTION commenced in the Superior Court Department on January 7, 1992.

The case was heard by *Patti B. Saris*, J., on motions for summary judgment.

*Joseph C. Tanski* for Maria Semedo-Anacleto.

*John J.C. Herlihy* (*Karen M. Thursby* with him) for Charles W. Barrett, Jr.

*Terrance J. Hamilton* for the plaintiff.

PERRETTA, J. This is an appeal from a summary judgment entered in favor of the plaintiff (CNA) on its complaint seeking reimbursment for the workers' compensation benefits that it paid to the defendant Semedo-Anacleto, who was seriously injured in the course of her employment and who thereafter entered into a settlement agreement with the Massachusetts Insurers Insolvency Fund (Fund) and the insured of the insolvent insurer. Because G. L. c. 175D precludes reimburse-

---

[1]Charles W. Barrett, Jr., counsel for Semedo-Anacleto on her tort claim.

ment by the contributors to the amount settled upon Semedo-Anacleto, that is, by the Fund and the insured of the insolvent insurer, and because Semedo-Anacleto is not thereby "in a better position than she would have been in if the [tortfeasor's] liability insurer had remained solvent," *Gaeta* v. *National Fire Ins. Co. of Hartford*, 410 Mass. 592, 595 (1991), we reverse the judgment.

1. *The undisputed facts.* We relate the undisputed facts. In 1984, Semedo-Anacleto was employed by Helen Walsh Associates, a placement service. She was injured while working at a packaging plant owned by Howard Johnson's, Inc. That corporation has since been merged into the Marriott. Semedo-Anacleto claimed that Marriott, the third-party defendant, negligently allowed her to work unprotected and improperly clothed for a protracted period of time in an area of extreme cold temperature, causing her serious injury, including severe frostbite, leading to gangrene of the toes of the left foot, transmetatarsal amputation of the right foot, and permanent nerve damage to both lower extremeties.

For her injuries, Semedo-Anacleto received $80,451.27 in workers' compensation benefits from her employer's workers' compensation carrier, CNA. Thereafter, she brought suit against Marriott, which had primary liability insurance through American Mutual Insurance Company (American), with limits of $500,000.00. Prior to trial on that tort claim, American was declared insolvent, and the Fund, pursuant to G. L. c. 175D, took over American's obligations to defend Marriott and to indemnify it up to the Fund's statutory limit of $300,000.00.

Marriott offered Semedo-Anacleto a settlement in the amount of $395,000.00. She and her attorney refused the offer on the basis that if any settlement amount was to be subject to a workers' compensation lien by CNA under G. L. c. 152, § 15, she would accept no less than $475,000.00.

Prior to trial, Semedo-Anacleto and her attorney settled her tort claim for $395,000.00, to which Marriott contributed $175,451.27 and the Fund paid in $219,548.73, that is, the difference between $300,000.00, the Fund's statutory

maximum, and $80,451.27, the amount of the workers' compensation payments. Semedo-Anacleto also entered into a separate agreement with the Fund which provides that the Fund will indemnify her in the event that CNA is found to have a valid lien on any of the settlement proceeds.[2] The settlement agreement, which detailed CNA's payments to Semedo-Anacleto while remaining silent on the matter of any lien, was approved by a Superior Court judge pursuant to G. L. c. 152, § 15.[3] The present action seeking reimbursement was then commenced.

On these undisputed facts, all the parties sought summary judgment. CNA argued that c. 152, § 15, creates a statutory right of reimbursement from settlement proceeds contributed by responsible third parties even if the Fund contributes to the total settlement pursuant to c. 175D, while Semedo-Anacleto and Barrett contended that c. 175D precludes CNA from enforcement of any lien against them. As we construe the decision of the Superior Court judge, she determined that because Semedo-Anacleto would be indemnified by the Fund for any money she was required to pay CNA, there was, for all intents and purposes, a $300,000.00 contribution by the Fund to the settlement. Had American remained solvent and contributed that amount to the settlement, CNA would be entitled to reimbursement, which, therefore, was not precluded by c. 175D.[4]

---

[2]The parties to this appeal agreed that the question whether the indemnity agreement is null and void is not before us. In any event, any concerns about the enforceability of that agreement need not be addressed in view of our conclusion that CNA is precluded from seeking reimbursement from Semedo-Anacleto.

[3]There is some difference of opinion among the parties concerning CNA's knowledge of the settlement of Semedo-Anacleto's tort claim and its opportunity to be heard. CNA makes no argument before us that this disagreement is material and would prevent summary judgment in favor of the defendants.

[4]Specifically, the Superior Court judge stated: "[T]he structure of the settlement deprives the workers' compensation insurer of the protection guaranteed by G. L. c. 152, § 15. Under the analysis in *Gaeta* [v. *National Fire Ins. Co. of Hartford*, 410 Mass. at 595], if American Mutual had remained solvent and had contributed $300,000 to the settlement, the amount of workers' compensation benefit payments would 'very clearly' be-

2. *Discussion.* In deciding that CNA was not precluded from reimbursement by G. L. c. 175D, the Superior Court judge appears to have proceeded upon the assumed but undetermined validity of the indemnity agreement between Semedo-Anacleto and the Fund. Until it is first determined that CNA has a right to reimbursement from the settlement proceeds received by Semedo-Anacleto, that agreement and the troublesome question of whether its performance would be a prohibited payment by the Fund of a claim of an insurer are not relevant. To determine whether CNA has a right of reimbursement from Semedo-Anacleto's settlement proceeds, we look to G. L. c. 152, § 15, and G. L. c. 175D.

CNA's claim of a right to reimbursement arises under G. L. c. 152, § 15 (as appearing in St. 1991, c. 398, § 39[5]), which, as here pertinent, provides that any money recovered in any action against a third party "shall be for the benefit" of the workers' compensation insurer and that any amount recovered which exceeds the amount due the compensation insurer "shall be retained by" the employee. The purpose of this provision is to prevent double recovery by the employee, that is, "once by way of compensation and once by way of damages." *McDonald v. Employers' Liab. Assur. Corp., Ltd.*, 288 Mass. 170, 174 (1934). See also *Percoco's Case*, 418 Mass. 136, 139 (1994).

We turn to the third-party action, Semedo-Anacleto's negligence claim against Marriott. As a result of the insolvency of Marriott's liability insurer, American, the Fund became obligated, under G. L. c. 175D, § 5(1) (*a*) (as inserted by St. 1970, c. 261, § 1), to pay "covered claims" against Marriott up to the statutory amount of $300,000.00, less the amount of the workers' compensation payments which, by definition, cannot be part of a "covered claim." As defined by c. 175D, § 1(2) (as amended by St. 1975, c. 341, § 1), a " 'Covered claim' shall not include any amount due any . . . in-

---

long to CNA. . . . Accordingly, G. L. c. 175D does not preclude recovery by CNA from the defendants who are indemnified by the Fund."

[5]See St. 1991, c. 398, § 107. The section prior to its rewriting contained the same provision.

surer . . . ." Notwithstanding the fact that Marriott's primary liability policy with America had limits of $500,000.00, the Fund contributed to the settlement as much as allowed by c. 175D.

Recognizing these statutory limitations and relying upon *Gaeta* v. *National Fire Ins. Co. of Hartford*, 410 Mass. at 595, CNA argues that because the total amount of the settlement is well in excess of the amount of the compensation benefits paid Semedo-Anacleto and because the third-party defendant, Marriott, also contributed to the settlement, it can be reimbursed independent of the money paid by the Fund. In *Gaeta*, however, several parties contributed to the settlement, and the compensation insurer could be reimbursed in full from the contribution to the settlement made by a party other than the insured of the insolvent insurer. The difference is, in our view, crucial in light of the proviso in § 1(2), that "in no event" may any claim for any amount due an insurer be "asserted against the insured of such insolvent insurer." In the present case, there were only two contributors to the settlement, the Fund and Marriott, the insured of the insolvent insurer.

Our conclusion, that CNA is precluded in this case from reimbursement by the provisions of c. 175D, is not inconsistent with the purpose of either G. L. c. 152, § 15, to prevent double recovery, see *Percoco's Case*, 418 Mass. at 139, or G. L. c. 175D, "to indemnify injured persons." *Ferrari* v. *Toto*, 9 Mass. App. Ct. 483, 487 (1980), *S.C.*, 383 Mass. 36 (1981). Semedo-Anacleto sought recovery from Marriott in the amount of $475,000.00. Had American not become insolvent and had Marriott settled with her, CNA would have been reimbursed, and Semedo-Anacleto would have been in no better position than the one in which her settlement of $395,000.00 placed her.[6] If she were now required to reim-

---

[6]CNA suggests that the figure of $475,000.00 is "fraught with speculation." Aside from the undisputed allegations concerning the severity of Semedo-Anacleto's injuries, we think that CNA's view of the amount of recovery she sought is irrelevant. The undisputed fact of the matter is that if Semedo-Anacleto was required to reimburse CNA, she was not going to settle for less than $475,000.00.

burse CNA, and if the indemnity agreement were determined to be null and void, her settlement would be in an amount far less than what she had bargained for, that is, about $315,000.00. Compare *Gaeta* v. *National Fire Ins. Co. of Hartford*, 410 Mass. at 595.

Although CNA will sustain a loss as a result of our conclusion, that G. L. c. 175D precludes it from reimbursement of the compensation benefits it paid to Semedo-Anacleto, that conclusion is, in the present case, "consistent with the legislative intent [of c. 175D] and is not inconsistent with any demonstrated public policy." *Ferrari* v. *Toto*, 383 Mass. at 39.

Accordingly, the judgment is reversed, and the matter is remanded to the Superior Court for entry of summary judgments for the defendants.

*So ordered.*