## MICHAEL DUFRESNE'S CASE.

No. 99-P-750.

Suffolk. November 9, 2000. - February 27, 2001.

Present: LAURENCE, SMITH, & GILLERMAN, JJ.

*Workers' Compensation Act,* Decision of Industrial Accident Reviewing Board, Subsequent injury. *Words,* "Offset."

Discussion of the so-called *"Hunter* offset" (*Hunter* v. *Midwest Coast Transp., Inc.,* 400 Mass. 779 [1987]), i.e., the ability of a workers' compensation insurer to offset, against future compensation payments, excess amounts recovered by an injured employee pursuant to a third-party claim, and discussion of the impact of insolvency of the third party's insurer on the *Hunter* offset. [85-87]
This court concluded that a workers' compensation insurer, seeking a *Hunter* offset against future compensation benefits, based on allegedly excess amounts recovered by an injured employee three years earlier from the Massachusetts Insurers Insolvency Fund in settlement of his claims against a third party, was precluded from such an offset by the provisions of G. L. c. 175D, § 1(2). [87-89]

APPEAL from a decision of the Industrial Accident Reviewing Board.

*Robert M. Schwartz* for the employee.

*Joseph J. Durant* for the insurer.

GILLERMAN, J. The reviewing board of the Department of Industrial Accidents (board)[1] affirmed the decision of an administrative judge who awarded a specific period of weekly benefits for the temporary, total incapacity of the employee, as well as several periods of compensation for his partial incapacity, which was continuing. The board reversed the judge's order allowing Wausau Insurance Company (Wausau), the employer's

---

[1]General Laws c. 152, § 11C, as amended by St. 1987, c. 691, § 7, provides in pertinent part that "[a]ny party aggrieved by a decision of an administrative judge . . . shall have thirty days from the filing date of such decision within which to file an appeal from said decision to the reviewing board."

workers' compensation insurer, to offset, under the provisions of G. L. c. 152, § 15, the amount received by the employee in a settlement of a third-party claim (the so-called "*Hunter* offset").[2] Wausau has appealed.[3] Our review is limited to the board's decision, see *Percoco's Case*, 418 Mass. 136, 138 (1994), and we affirm the decision of the board.

*Wausau's claim to an offset.* We first state the undisputed facts that form the background for Wausau's claim to an offset. The employee, Michael Dufresne, whose employer was Foss Manufacturing Company (Foss), sustained a workplace injury on September 12, 1986, which resulted in the amputation of his right leg below the knee. The employee and his wife brought suit against LaRoche et Fils (LaRoche), the manufacturer of the machine involved in the accident, and against Frank G. W. Mc-Kittrick Company, Inc. (McKittrick), the distributor and sales representative of LaRoche, which sold the LaRoche machine to Foss. McKittrick's insurer (Integrity Insurance Company) became insolvent, and the Massachusetts Insurers Insolvency Fund (Fund) became obligated to pay unpaid claims to the extent that they were "covered claims" within the meaning of

---

[2]General Laws c. 152, § 15, as in effect at the time of the settlement of the third-party claim, provided in relevant part that sums recovered from a third party in response to the claim of the employee "shall be for the benefit of the insurer, unless such sum is greater than that paid by it to the employee, in which event the excess shall be retained by or paid to the employee." G. L. c. 152, § 15, as amended through St. 1986, c. 662, § 5A. Regarding future compensation benefits, the mechanism commonly used is the right of the insurer to offset the "excess" amounts paid to the employee against future compensation payments. The purpose of the offset is to preclude a double recovery by the employee. See *Richard* v. *Arsenault*, 349 Mass. 521, 524-525 (1965). See also *Hunter* v. *Midwest Coast Transp., Inc.*, 400 Mass. 779, 782-784 (1987), holding, in addition, that in calculating the amount of the offset, the insurer must deduct its share of the employee's attorney's fees and costs. As noted in the text, this right of offset is referred to as the "*Hunter* offset." See generally *Pina's Case*, 40 Mass. App. Ct. 388, 390 n.3 (1996); *Barbosa's Case*, 47 Mass. App. Ct. 236 (1999). The amendment to § 15 was inserted by St. 1991, c. 398, § 39, effective seven months after the court approval of the settlement agreement described in the text. See note 8, *infra*.

[3]General Laws c. 152, § 12(2), as amended by St. 1991, c. 398, § 32A, provides that an appeal from a decision of the reviewing board shall be taken "pursuant to section fourteen of chapter thirty A . . . ." The appeal must be filed with the Appeals Court. See also "Standing Order [of the Appeals Court] Governing Appeals From the Industrial Accident Reviewing Board." Under that standing order, the appeal is first sent to a single justice. The single justice may decide the case or, as in the case before us, report the case to a panel of the Appeals Court.

G. L. c. 175D, § 1(2). See note 5, *infra*. The limit of liability of the Fund for any one claim is $300,000. G. L. c. 175D, § 5(1)(*a*).

The Dufresnes' suit against McKittrick and LaRoche was settled, and on May 17, 1991, the settlement was approved by a judge of the Superior Court. See G. L. c. 152, § 15, discussed *infra*.

The settlement agreement (agreement)[4] is set forth in a pleading filed in the Middlesex Superior Court and bears the caption, "Joint Petition for Approval of Settlement Pursuant to MGL Chapter 152, Section 15." The parties to the agreement are the employee and his wife, Wausau, McKittrick, and LaRoche. The agreement recites the circumstances of the employee's accident and the extent of his injuries, including that fact that the employee's prosthetic device (his artificial limb) *"requires periodic replacement and it is anticipated as the plaintiff ages, and conditions in his leg change, he will require additional and ongoing treatment"* (emphasis added).

The agreement calls for the payment of $100,000 to the employee, subject to attorney's fees and expenses. The agreement recites that the employee's claim had been forwarded to the Fund because of the insolvency of McKittrick's insurer, that under the provisions of G. L. c. 175D, the Fund "is prohibited" from satisfying Wausau's lien[5] (for medical expenses and compensation benefits paid in the total amount of $106,321), and, to preclude any double recovery by the employee, that the Fund is required to reduce the coverage available to the employee, $300,000, by the amount of Wausau's lien, $106,321, leaving the Fund a disposable balance of $193,679. On the basis of that availability, the agreement recites that the $100,000 settlement was reached. After deducting attorney's fees and

---

[4]Wausau's brief states that the settlement was "over the objection of [Wausau]," but neither the grounds for the objection nor the possible consequences of the objection is mentioned. Consequently, we make no further mention of the "objection."

[5]See G. L. c. 175D, § 1(2) (the Fund is authorized to pay only a "covered claim"; exclusions from that defined term include amounts due an insurer and claims against an insured of an insolvent insurer). We have described the rationale for those exclusions. "[T]he design of the Fund [is] to indemnify injured persons, but not the insurance industry." *Ferrari* v. *Toto*, 9 Mass. App. Ct. 483, 487 (1980), *S.C.*, 383 Mass. 36 (1981). As noted earlier, Wausau was Foss's compensation insurer.

expenses, the plaintiff was to receive from the Fund[6] the net amount of $65,864.85.

The judge of the Superior Court endorsed his approval of the agreement on May 17, 1991: "After hearing, the petition is allowed and the settlement is approved. Plaintiff's award of $100,000 [is] to be made after the carrier's lien of $106,321 has been offset and, thereby, extinguished." Wausau was a party to the petition for the approval of the agreement. The judge's approval became a final judgment; no notice of appeal was filed.

We now summarize the subsequent events which gave rise to the controversy before us. The employee filed a claim for G. L. c. 152, § 35, benefits (temporary, partial incapacity) from October 31, 1993, and continuing. After the entry of an order in 1994 awarding § 35 benefits, Wausau began paying benefits and medical bills, but unilaterally retained a *Hunter* offset, see note 2, *supra*, against the net proceeds of the settlement.

In September, 1994, the employee developed blisters on his residual limb, which led to the an application for G. L. c. 152, § 34, benefits (temporary, total incapacity) for this period ending December, 1994.

The administrative judge conducted hearings on the employee's claims for §§ 34 and 35 compensation, as well as §§ 13 and 30 medical benefits. Wausau claimed the application of G. L. c. 152, § 35B (described below), as well as its entitlement to the *Hunter* offset. The administrative judge issued his decision on August 25, 1995. He found that the employee's injuries and the ensuing impairment were causally related to his September 12, 1986, injury. Compensation orders were entered, the details of which need not be recited. He also concluded that the employee's worsened condition, which commenced in September, 1994, constituted a "subsequent injury" under G. L.

---

[6]The agreement recites that "all" of the settlement fund of $100,000 was "contributed by the defendant McKittrick," but the balance of the agreement, as well as the decision of the board, appear to assume that the settlement funds were paid from the Fund. The difference is critical since disbursement from the Fund is limited to "covered claims." See note 5, *supra*. Contrast *Gaeta* v. *National Fire Ins. Co. of Hartford*, 410 Mass. 592 (1991), where the contribution to the settlement was made "by a party other than the insured of the insolvent insurer" thereby avoiding the "covered claims" limitation on the use of monies from the Fund. *CNA Ins. Cos.* v. *Samedo-Anacleto*, 39 Mass. App. Ct. 271, 275 (1995) (discussing *Gaeta*). The parties make nothing of the difficulty, and we proceed on the assumption adopted by the parties and the board — that the settlement funds came from the Fund.

c. 152, § 35B (an employee who is subsequently injured after receiving compensation and having returned to work is entitled to be paid compensation at the rate in effect at the time of the subsequent injury). This resulted in a reduced rate of payment to the employee.

The judge also authorized a continuing *Hunter* offset by Wausau against the compensation payment ordered, but exclusive of the consortium claim.[7] Cross appeals followed. The employee argued that the judge erred in authorizing the offset and in applying § 35B to lower his rate of compensation. Wausau disputed the benefits awarded to the employee.

On appeal, the board, relying on both *CNA Ins. Cos.* v. *Semedo-Anacleto*, 39 Mass. App. Ct. 271, 274-276 (1995), and *Ferrari v. Toto*, 9 Mass. App. Ct. 483, 486 (1980), *S.C.*, 383 Mass. 36 (1981) (where the court agreed "with the Appeals Court's reasoning and conclusion"), held on June 30, 1998, that the *Hunter* offset — derived from the employee's 1991 settlement agreement with the Fund — against "ongoing compensation benefits" was unavailable to Wausau because there was "no valid distinction between excluding the insurer's lien for workers' compensation payments from direct indemnity . . . [as Wausau acknowledged in the 1991 settlement agreement which 'extinguished' its lien], and the insurer's gaining the indirect benefit of that recovery by way of an offset credit under G. L. c. 152, § 15 continuing into the future." The board adhered closely to the definition of a "covered claim" in G. L. c. 175D, § 1, see note 5, *supra*, so as to preclude both a direct and an indirect benefit to an insurer from monies provided by the Fund.

We agree with the board that Wausau may not recover from the employee by way of an offset.

The offset made its first appearance in *Richard* v. *Arsenault*, 349 Mass. 521 (1965) — G. L. c. 152, § 15, makes no mention of the offset — and appears later in *Hunter* v. *Midwest Coast Transp., Inc.* 400 Mass. 779 (1987) (thus the phrase *Hunter* offset). See note 2, *supra*. As stated in note 2, the purposes of the offset are first to preclude double recovery by the employee ("once by way of compensation and once by way of damages," *Richard* v. *Arsenault*, *supra* at 524, quoting from *McDonald* v. *Employers' Liab. Assur. Corp. Ltd.*, 288 Mass. 170, 174 [1934]),

---

[7]Although both the employee and his wife were parties to the agreement, it fails to identify that portion, if any, which covers the consortium claim.

and, second, to maintain the policy of reimbursement for the compensation insurer, *Richard* v. *Arsenault, supra.*

However, the doctrine of the *Hunter* offset has no applicability when the third party's insurer is insolvent and indemnification is available to the injured person only through the Fund as the substitute for the insolvent insurer. In that event, distributions from the Fund are limited to "covered claims" defined in G. L. c. 175D, § 1(2), second par., to exclude insurers and the insured of insolvent insurers, among others. See note 5, *supra.* These exclusions reflect the Fund's purpose "to indemnify injured persons, not the insurance industry." *Ferrari* v. *Toto,* 9 Mass. App. Ct. at 487.

Further, regarding insolvency proceedings, to maintain the policy precluding double recovery by the employee, *Ferrari* v. *Toto* decided that the Fund, in determining amounts due an employee who had received benefits on account of a workplace injury covered by the Workers' Compensation Act, was required to reduce its limit of liability by an amount equal to the amount of uncompensated payments of benefits and medical expenses disbursed by the compensation insurer, such as Wausau. 9 Mass. App. Ct. at 486. Moreover, *Ferrari* held that the "covered claims" limitations which had been imposed on the Fund by G. L. c. 175D, § 1(2), second par., prohibited *any* distribution by the Fund or by the insured of an insolvent insurer to an insurer. (There was nothing in the record that suggests that the claim exceeded the policy limits.) See *id.* at 486 ("[T]he Fund is excused from paying claims [of the employee] if the ultimate beneficiary is an insurance company").

The result of this statutory/decisional configuration was that the compensation insurer, in the event an injured employee successfully maintained a third-party action, would receive reimbursement for benefits paid by it either by way of cash from the proceeds of the third-party claim (the result required by G. L. c. 152, § 15) or, as to future benefits to be paid by the insurer, by way of a *Hunter* offset (the result required by the *Richard* v. *Arsenault* decision), and in the event the proceeds of the disposition of the third-party action, after deducting the employee's share of attorney's fees and costs, yielded an amount in excess of the amount due the compensation insurer, the excess was the exclusive property of the injured employee. See *Richard* v. *Arsenault,* 349 Mass. at 525.

If, however, the third party's insurer had become insolvent,

the compensation insurer would receive *no* reimbursement for benefits and medical expenses previously paid by it, either by way of cash or as an offset. Instead, the Fund would reduce its limit of liability to the employee by the amount of the unpaid benefits and expenses, as described above, and the lien of the compensation insurer was wiped out, as ordered by the Superior Court judge. Cf. *Ferrari* v. *Toto*, 9 Mass. App. Ct. at 484.

We arrive, now, at the question presented by this case. To recapitulate the material background facts: In a third-party action brought by the employee, the insurer of the third-party defendant had become insolvent so as to bring into play c. 175D, and after the Fund had properly reduced its limit of liability to the employee by the unpaid amount due the compensation insurer for benefits and expenses, and after the lien of the compensation insurer had, accordingly, been "extinguished" by court order, the net amount of the settlement distributed by the Fund to the employee was $65,864. Now, may the compensation insurer, three years after the original settlement of the third-party action, apply the employee's $65,864 "excess" toward a *Hunter* offset against *additional* benefits and expenses paid, and being paid, by the insurer to the employee following the settlement? This issue seems not to have been previously considered by a Massachusetts appellate court.

The point to be made is that the $65,864 in the hands of the employee had been distributed to him by the Fund, and had Wausau, at the time of settlement negotiations, demanded that a cash reserve against the foreseeable need of future benefits be carved out of the gross settlement and distributed to Wausau forthwith, or held in a reserve account for a later take-down by Wausau as the need arose, the request would have been denied out-of-hand. The Fund is prohibited from distributing its funds to an insurer; the distribution would not have been payment of a "covered claim." *Ferrari* v. *Toto, supra,* is dispositive on the issue. Thus, the question comes down to whether Wausau, three years after the settlement, is entitled to an offset against Wausau's payment of postsettlement benefits when the basis for the offset is the $65,824 "excess" in the hands of the employee.

We conclude that the answer is in the negative. Since, at the time of the settlement, the employee's future need of benefits was stated to be foreseeable, the "excess" held by the employee would, in an ordinary third-party proceeding, be offset by the compensation insurer against benefits paid after the settlement

agreement, just as required by *Richard* v. *Arsenault, supra,* and *Hunter* v. *Midwest Coast Transp., Inc., supra.* The difficulty in this case is that this is an insolvency case, not an "ordinary third-party proceeding." The settlement fund, including the "excess" held by the employee, came from assets of the Fund, and *Ferrari* v. *Toto* is clear that the Fund may not pay out its assets "if the ultimate beneficiary is an insurance company." 9 Mass. App. Ct. at 486. It matters not, in our opinion, that the hiatus between the settlement and the later need for additional benefits was three years. The required resolution of the double recovery problem in this insolvency case was the reduction in the limitation in the liability of the Fund for the *anticipated* payments by the insurer which the parties foresaw. (See note 8, *infra,* as to present law). This, too, was made clear enough in *Ferrari* v. *Toto, supra* at 484: "We hold that the liability of the Fund is reduced by so much as the claimant has received on account of the same injury from workmen's compensation insurance." Whether, had the proper procedure been followed, the employee would have ended up with *any* excess is entirely conjectural on this record, but that is of no consequence. Wausau failed to make that demand — probably for an understandable reason: it had nothing to gain by the reduction in the Fund's availability nor by the reduction of the monies distributable to the employee. Wausau stands in no better position today; Wausau, as the compensation insurer, has no claim on monies distributed by the Fund in 1991 to the injured employee.[8] As between Wausau and the Fund, "the loss must be absorbed by the workmen's compensation insurer." *Ferrari* v. *Toto,* 383 Mass. at 38. In other words, "the design of the Fund [is] to indemnify injured persons, but not the insurance industry." *Fer-*

---

[8]Had Wausau pointed out at the time of the settlement that the "excess" should be reduced by the amount of the foreseeable need to pay future benefits and expenses, the employee would have realized significantly less by way of an excess, and the issue of double recovery would have substantially diminished or disappeared. See now, G. L. c. 152, § 15, after the amendment inserted by St. 1991, c. 398, § 39, requiring a party to state in the settlement agreement the portion of any excess which "shall be subject to offset against any future payment of benefits . . . by the insurer, which amount shall be determined at the time of such approval [by the judge]." Even though the 1991 amendment is made "procedural in character," see St. 1991, c. 398, § 107, the amendment remains unavailable to Wausau because the proceedings against the Fund that culminated in a settlement agreement were completed and closed seven months prior to the amendment. See *Sliski's Case,* 424 Mass. 126, 130 (1997). Wausau makes no claim to the contrary.

*rari* v. *Toto*, 9 Mass. App. Ct. at 487. Wausau's argument that the necessary avoidance of double recovery by the employee requires judgment in its favor comes to nothing.

Wausau also relies on *Gaeta* v. *National Fire Ins. Co. of Hartford*, 410 Mass. 592 (1991). We pointed out in *CNA Ins. Cos.* v. *Semedo-Anacleto*, 39 Mass. App. Ct. at 275, that, in *Gaeta*, "several parties contributed to the settlement, and the compensation insurer could be reimbursed in full from the contribution to the settlement made by a party other than the insured of the insolvent insurer." In the case before us, *all* of the settlement funds were contributed by the Fund. *Gaeta* has no bearing on this case.

We have considered Wausau's additional arguments, all of which relate to the calculation of benefits. Those arguments have no merit, and we find no error.

> *Decision of the Industrial Accident Reviewing Board affirmed.*