Kern, Leila R., J.

INTRODUCTION

In Phase I of this litigation, the plaintiff utility companies seek to obtain excess liability coverage from the defendant insurers in connection with the clean-up of environmental contamination at the sites of former manufactured gas plants in Lynn, Salem and Malden. This matter is before the court on the Fund’s motion for partial summary judgment pursuant to Mass.RCiv.P. 56 regarding exhaustion and the plaintiffs’ cross motion for partial summary judgment on that issue. For the reasons discussed below, the Fund’s motion is ALLOWED and the plaintiffs’ cross motion is DENIED.

DISCUSSION

NEES held primary comprehensive general liability insurance (“CGL”) from Travelers covering the period January 1, 1948 through January 1, 1973. Travelers entered into a settlement with the plaintiffs on April 19, 2000.
NEES held numerous excess liability insurance policies from Certain London Market Insurers (“London”). From 1955 until 1965, London was NEES’ first-layer excess liability insurer. From 1965 until 1976, the Home Insurance Company (“Home”) was NEES’ first-layer excess insurer, with London, Midland and First State issuing excess coverage at higher layers. Each of the London policies states that “liability shall attach to [London] only after the Underlying Insurers have been held liable to pay the full amount of their ultimate net loss liability...” and contains the following provision under the heading “Maintenance of Underlying Insurance”:
It is a condition of this Policy that the Underlying Policies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein solely by payment of claims in respect to accidents and/or occurrences occurring during the period of the Underlying Policies.
The plaintiffs allege in Paragraph 17 of the Second Amended Complaint that the Massachusetts Insurers Insolvency Fund (“the Fund”) is obligated under CGL policies issued by Home and Midland Insurance Co. “up to the statutory maximum of $300,000 per covered claim, to defend Plaintiffs as to each of the Environmental Claims and to indemnify Plaintiffs with respect to each of the Massachusetts Sites to the same extent *218 that Home and Midland would have been obligated had they not become insolvent.”
The Fund is a non-profit, unincorporated legal entity created and governed by G.L.c. 175D. It is an association whose members consist of all licensed insurers writing the kinds of insurance covered by the Fund. The Fund pays for certain “covered claims” as defined in Chapter 175D, and obtains the monies needed to pay claims by assessing member insurers. The statute provides that a covered claim “shall not include any amount due any reinsurer, insurer, insurance pool or underwriting association . . .” G.L.c. 175D, §1(2). The Fund contends that in accordance with this provision, it is not obligated to defend or indemnify the plaintiffs until they exhaust all solvent primary and excess insurance providing a defense and indemnity for the same claim.
Chapter 175D, section 9 explicitly requires an insured to exhaust any rights under an insolvency provision in an insurance policy applicable to a covered claim before seeking recourse from the Fund. See Vokey v. Massachusetts Insurers Insolvency Fund, 381 Mass. 386, 389-90 (1980) (§9 entitles the Fund to offset for amounts received by insured under uninsured motorist policy provision). The plaintiffs argue that any exhaustion requirement is limited to this §9 insolvency provision. Cf. Post-Assessment Property and Liability Insurance Guaranty Association Model Act §12A (National Association of Insurance Commissioners 1999) (requiring exhaustion under “any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim”). However, the purpose of the Fund is to indemnify injured persons, not the insurance industry, and under the §1(2) definition of a “covered claim,” the Fund may not pay out assets if the ultimate beneficiary is an insurance company. In re Dufresne, 51 Mass.App.Ct. 81, 88-89 (2001). See also Ferrari v. Toto, 9 Mass.App.Ct 483, 486 (1980) (the Fund not liable to pay sum to insured which would end up as reimbursement to workers’ compensation insurer). Cf. General Sec. Co. v. Massachusetts Insurers Insolvency Fund, 61 Mass.App.Ct. 1124 (2004) (unpublished) (the Fund not liable to make contribution payment to insurer of settling joint tortfeasor). Several courts have concluded that under §1(2), the Fund cannot disburse funds to defend or indemnify an insured where a solvent insurer is obligated to provide defense or indemnity for the same claim, and there is no “covered claim” under Chapter 175D until all solvent coverage has been exhausted. See A.W. Chesterton Co. v. Northbrook Excess Co., Civil No. 96-4871 (Middlesex Super.Ct. May 20, 2003) (McLaughlin, J.); Massachusetts Insurers Insolvency Fund v. National Union Fire Ins. Co., Civil No. 89-1784 (Suffolk Super.Ct. April 17, 1990) (Donovan, J.). Cf. Massachusetts Insurers Insolvency Fund v. Arbella Mut. Ins. Co., 14 Mass. L. Rptr. No. 17, 386 (Mass.Super.Ct. April 29, 2002) (van Gestel, J.) (any payment that absolves solvent insurer of having to pay claimantis contrary tolegislativeintent) .Accordingly, the Fund is not liable until the plaintiffs have exhausted all solvent primary and horizontal excess coverage.
The plaintiffs’ settlement for less than the policy limits is sufficient to satisfy this exhaustion requirement. However, in order to effectuate the statutory policy of ensuring that the Fund is a recovery of last resort, the Fund is entitled to a credit of the full limits of the settled policy. See Hasemann v. White, 686 N.E.2d 571, 573-74 (Ill. 1997) (Fund entitled to credit of policy limits although statutory non-duplication clause provides for reduction “by the amount of such recovery”). See also Colorado Ins. Guar. Ass’n. v. Harris, 827 P.2d 1139, 1142 (Colo. 1992); Hetzel v. Clarkin, 772 P.2d 800, 806 (Kan. 1989). Finally, the requirement that the plaintiffs exhaust all available solvent coverage before seeking recourse from the Fund in no way alters the attachment point of London’s excess coverage.

ORDER

For the foregoing reasons, it is hereby ORDERED that the Fund’s motion for partial summary judgment against all parties regarding exhaustion be ALLOWED and the plaintiffs’ cross motion be DENIED. It is hereby ADJUDGED and DECLARED that any obligation by the Fund to provide a defense of any suit against any plaintiff or to pay defense or investigation costs does not arise until the plaintiff exhausts all solvent primary and excess insurance providing for the defense of such suit or payment of such costs. Further, any obligation by the Fund to pay indemnity on any claim against any plaintiff does not arise until the plaintiff exhausts all solvent primary and excess insurance providing indemnification for such claim.
It is further ADJUDGED and DECLARED that the exhaustion requirement is satisfied by the plaintiffs’ settlement of the coverage obligations of all applicable policies issued by solvent insurers. Regardless of the actual amount of the settlement, the Fund is entitled to a credit of the full limits of the settled policy.