Fabricant, Judith, J.
These three cases arise out of three underlying medical malpractice actions (the underlying actions) filed in the Superior Court.[5] The medical providers in each case held professional liability insurance written by an insurer that became insolvent, resulting in potential liability of the Massachusetts Insurers Insolvency Fund (the Fund). The Fund filed these three actions for declaratory judgment to resolve certain controversies regarding the extent of its potential liability in the underlying actions.[6] Before the Court are two sets of motions: (1) motions of the Massachusetts Liability Mutual Insurance Company (MLMIC) to stay certain claims in cases nos. 08-5660 and 08-5661 pending trial of the underlying actions: and (2) the Fund’s motions for summary judgment on each of its pending claims in all three cases. For the reasons that will be explained, MLMIC’s motions to stay will be allowed, and the Fund’s motions will be allowed as to the issue of defense costs.
*182 BACKGROUND
The record before the Court establishes the following facts as undisputed. The Fund is a non-profit unincorporated entity created by statute, G.L.c. 175D, §1 et seq. (the Act). The Fund’s function is to step into the shoes of insolvent insurance companies, so as to pay certain claims that would have been covered by policies written by such companies, subject to statutory limitations and conditions. Massachusetts Motor Vehicle Reinsurance Facility v. Commissioner of Ins., 379 Mass. 527, 530 (1980). Patterned after the so-called “Post-Assessment Property and Liability Insurance Guaranty Association Model Act,” the Act established the Fund to benefit the public by ensuring that insured persons will be compensated for losses incurred in the event that the insurer becomes insolvent. Ferrari v. Toto, 9 Mass.App.Ct. 483, 487 (1980). The Fund periodically assesses member insurers the amounts required to pay claims. Id. Under G.L.c. 175D, §13, insurers may recoup amounts paid into the Fund by increasing their rates and premiums. In this way, the cost of paying claims against insolvent insurers is ultimately passed on to the insurance-buying public. Massachusetts Motor Vehicle Reinsurance Facility, 379 Mass. at 530.
Each of the medical providers named in the underlying actions held insurance covering the time period of August 1, 2001, through August 1, 2002, written by Lawrenceville Property and Casualty Co. That entity merged into MIIX Insurance Company (MIIX) in 2003, and the parties refer to the policies in issue as the “MIIX policy.”[7] Each of the medical providers also held coverage for some part of the relevant time period under a policy issued by a predecessor of Medical Liability Mutual Insurance Company (MLMIC) (the so-called “HUM” policy, based on the name of MLMIC’s predecessor). In addition, the providers in the Winter-son case (the case underlying case no. 08-2683) held coverage for part of the relevant time period under a policy issued by Medical Professional Mutual Insurance Company (ProMutual). On April 9, 2008, a court of competent jurisdiction declared MIIX insolvent, and ordered it liquidated. MLMIC and ProMutual remain solvent.
As a result of the MIIX insolvency, the potential liability under the MIIX policies for the claims in the underlying cases fell to the Fund, which then brought these declaratory judgment actions to determine the scope of its liability in the underlying cases. As outlined supra at note 6 with respect to the counts alleged in each case, the Fund seeks to establish in all three cases (1) that it has no obligation to share defense costs with the solvent insurers, and in cases nos. 08-5660 and 08-5661, (2) that its obligation of indemnity is less than $300,000 for all claims in each underlying case;[8] (3) that it has no obligation to indemnify the insureds until they have exhausted all other insurance coverage;[9] and (4) that it has no obligation to indemnify Hawthorn for the claims against it in the underlying cases.
DISCUSSION
1. The Motion to Stay
MLMIC moves to stay counts I and III of cases no. 08-5660 and 08-5661 pending resolution of the underlying actions. It points out that the indemnity issues raised by those counts are, at this stage, merely hypothetical, since no insurer will have any obligation of indemnity unless and until an award of damages occurs in the underlying actions. Further, it argues, even if the underlying actions result in monetary judgments against some or all of the insureds, resolution of the indemnity issues will require determination of facts — such as the timing of any negligence by the providers and resulting harm in relation to the coverage periods of the various policies — that cannot be determined on the record presented here. The Fund responds, in substance, that it seeks tentative rulings based solely on the allegations of the complaints in the underlying actions, and that clarification of the scope of its indemnity obligations may facilitate settlement of the underlying actions.
The Court is not persuaded that the prospect of settlement of the underlying actions justifies deciding hypothetical issues that may never ripen into actual controversies. As the Fund argues, most cases settle. But medical malpractice cases, in this Court’s experience, settle less often than other types of personal injury cases, and often (although certainly not always) result in defense verdicts after trial. The limited information available to the Court with respect to the underlying cases does not provide a basis to conclude that settlement is likely, or that this Court’s decision of the issues presented here would significantly increase its likelihood.
It also appears, as MLMIC argues, that resolution of at least some of the indemnity issues may require determination of certain facts that the Court cannot determine in this proceeding, but that likely will be determined in the underlying cases. In each of the actions underlying the two cases that are the subject of the motions to stay, the medical services in issue spanned a period of years, for part of which each of the MIIX and MLMIC policies provided insurance coverage. Trial of the underlying cases may clarify the facts so as to narrow the period of any negligence and resulting harm to the time covered by one of the policies, obviating the need for allocation among insurers, or may provide a basis for apportionment based on actual liability. See Boston Gas Company v. Century Indemnity Company, 454 Mass. 337, 350-51 (2009) (damages to be allocated among insurance policies only where Court cannot determine the proportion of damages that occurred in each policy period) .
As to the issue of indemnification of Hawthorn, although the issue appears to be primarily a matter of *183 interpretation of the policy exclusion on which the Fund relies, trial of the underlying cases may also provide clarification on a pertinent factual issue. The policy excludes coverage of Hawthorn for vicarious liability for professional services by providers “for whom a premium charge is shown on the declarations page.” The complaints in the underlying cases allege negligence by providers who fit that description, and also assert claims of negligence by Hawthorn, without further specifying the basis of those claims. Based on those allegations, it certainly appears likely, as the Fund contends, that the claims against Hawthorn are based on vicarious liability for negligence of those same providers, and no others. At this stage, however, the Court cannot make that determination with certainly, based solely on the allegations of the underlying complaints; trial of the underlying cases will clarify the point.
The issue of application of the statutory cap is more susceptible of resolution at this stage, in that it does not depend on factual issues of timing, but presents a narrow question of law. As noted supra, this Court has recently decided the same issue in a separate case, to which MLMIC is not a party; that decision should provide guidance to the parties here. The Court sees no purpose to be served by causing MLMIC to expend the resources to address the issue in these cases at this stage. Accordingly, the Court will stay counts I and III of nos. 08-5660 and 08-5661.
2. The Motions for Summary Judgment Regarding Defense Costs
The Fund’s claims regarding its obligations for defense costs raise a question of law appropriate for resolution on summary judgment. See Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007); Mass.R.Civ.P. 56(c). The Court’s determination of the issue requires consideration of the relevant provisions of the MIIX, HUM and ProMutual policies as well as the language and purpose of the Act.
The MIIX policy provides that MIIX “shall have the right and duty: to defend any claim or suit against the insured” seeking damages for covered injuries. Section I.A of the HUM policy provides that HUM “will have the right and duty to defend the ‘insured’ against any ‘claim’ seeking damages even if the allegations of the ‘claim’ are groundless, false or fraudulent.” That right and duty ends when MLMIC has used up the applicable limit of coverage in the payment of judgment or settlements. Similarly, section IV of the ProMutual policy provides that ProMutual has “the right and duty to defend . . . any SUIT brought against YOU seeking DAMAGES that are covered by this POLICY even if any of the allegations of the SUIT are groundless, false or fraudulent...” The ProMutual policy further provides that ProMutual’s obligation to defend ends “after the applicable Limit of Liability of this POLICY has been exhausted by payment of settlements or judgments . . .” There is no dispute that, had MIIX remained solvent, it would have had a duty to share defense costs with MLMIC and ProMutual.
Based on the language of the MIIX policy, and the statutory directive that the Fund “shall be deemed the insurer to the extent of its obligation on the covered claim and shall have the rights, duties and obligations of the insolvent insurer to such extent,” G.L.c. 175D, §5(1) (b), the solvent insurers and the parties in the underlying actions contend that the Fund is obligated to share in the cost of the defense of those actions. The Fund, relying on the definition of covered claim in G.L.c. 175D, §§1(2), argues that it has no obligation for defense costs until the insured medical providers have exhausted the defense coverage available to them from the solvent insurers.
The Act defines a “covered claim” as an “unpaid claim. .. which arises out of and is within the coverage of an insurance policy to which this chapter applies.” The definition goes on to provide that a “ ‘Covered claim’ shall not include ... (2) any amount due a reinsurer, insurer, insurance pool or underwriting association.” G.L.c. 175D, §1(2). The Fund points out that any payment it would make for defense costs that the solvent insurers would otherwise pay would benefit insurers, rather than claimants or insureds; on that basis, it contends, a claim for such payment falls outside the definition of a covered claim. Moreover, the Fund points out, to the extent that the solvent insurers have already paid for defense (as they apparently have in Winterson), a claim for such costs is not “unpaid,” and falls outside the definition for that reason as well. The Court agrees on both points.
The defendants rely on the Supreme Judicial Court’s decision in A.W. Chesterton Co. v. Massachusetts Insurers Insolvency Fund, 445 Mass. 502, 527 (2005). That case involved large numbers of claims of injury from exposure to asbestos in products manufactured by the insured, which held primary comprehensive general liability insurance policies and multiple layers of excess indemnity policies. Id. at 504. After exhausting the indemnity limits of its primary policies, the insured sought coverage under its excess policies. When Midland, the issuer of four of those policies, became insolvent, the insured turned to the Fund. Id. at 505. The excess policies, including those available to the insured from the solvent insurers, provided what is known as “ultimate net loss” coverage; that is, they set a total maximum limit of coverage applicable to the combination of defense costs and indemnify. Id. at 518; see, e.g., Boston Gas Com. v. Century Indemn. Co., 454 Mass. 337, 341-43 (2009); Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 608 (1987). Thus, were the Fund to refuse to contribute, “payments by other insurers for defense costs would reduce the amount of ‘ultimate net loss’ coverage otherwise available to indemnify [the insured] for its liability on the underlying claims asserted against it.” Chesterton, 445 Mass. at 526. That result would con *184 travene the legislative intent that the fund provide “a safety net for the protection of claimants and policyholders.” Id. For that reason, the Court held that the Fund was obligated to defend.
These cases do not involve any ultimate net loss policies. The defense provisions of the both the HUM policy and the ProMutual policy are independent of the indemnification provisions and policy limits of those policies. Thus, unlike the situation in Chesterton, payment of defense costs by the solvent insurers in these cases has no adverse effect on the insured, and payment of such costs by the Fund would provide no benefit to the insured; the only benefit from such payment would fall to the solvent insurers, in contravention of the exclusion provided in the statutory definition of covered claim. See Ferrari v. Toto, 9 Mass.App.Ct. 483, 486 (1980) (Fund not liable to pay sum to insured that would end up as reimbursement to workers’ compensation carrier).
As the defendants point out, the language of the Midland policy at issue in Chesterton differed from that of the MIIX policy here in that it obligated the insurer to defend Chesterton only “(i]f no other insurer has the right and duty to do so . . ."A.W. Chesterton v. Massachusetts Insurers Insolvency Fund, 445 Mass. at 526. Based on that language, the court observed that the “Fund’s obligation to defend Chesterton is set forth in the Midland policy language and arises if ‘no other insurer has the right and duty to do so.’ ” Id. at 527. The MIIX policy in issue here contains no such language. In the Court’s view, however, the difference is not dispositive because the statutory definition discussed supra accomplishes the same effect; a covered claim does not include any amount that would be paid for the benefit of an insurer, as opposed to a claimant or insured.[10]
The Court therefore concludes that the Fund is not obligated to contribute to defense costs in these cases until such time as the insureds have exhausted all defense available under the policies of the solvent insurers.[11] The Fund is entitled to a declaration to that effect in each case.
CONCLUSION AND ORDER
For the reasons stated, Defendant Massachusetts Liability Mutual Insurance Company’s Motion to Stay Counts I and III of the Plaintiffs Complaints for Declaratory Relief in each of cases Nos. 08-5660 and 08-5661 are ALLOWED. The Court orders that the parties shall file a status report promptly upon entry of judgment in each of the actions underlying those cases, and in any event, six months from the date of this order and at six month intervals thereafter. Plaintiffs Motions for Summary Judgment is ALLOWED with respect to all remaining claims in case no. 08-2683, and as to Count II of its complaint in each of cases nos. 08-5660 and 08-5661.

The action underlying case no. 08-2683 is Winterson v. Pothier, M.D. (Suffolk Civil Action No. 06-4661), in which five plaintiffs assert claims of negligence and loss of consortium against a medical provider and his corporate employer, Hawthorn Medical Associates LLC (Hawthorn), based on the care of a single patient in the years 2000-2005. The Winterson case has settled, and the parties to no. 08-2683 have stipulated to dismissal of all claims except counts III and IV, which seek declaratory judgment with respect to the issue of the Fund’s responsibility for defense costs. The action underlying case no 08-5660 is Vieira v. Browne, M.D. et at (Bristol Civil Action No. 05-0186), in which the executor of the estate of a deceased patient asserts claims of wrongful death and conscious pain and suffering against three medical providers and their corporate employer (Hawthorn, the same employer as in Winter-son), based on care provided in the years 2000-2004. The action underlying case no. 08-5661 is Estrella v. Altschuller, M.D. et al. (Bristol Civil Action No. 05-1392), in which the executor of the estate of a deceased patient asserts claims of wrongful death and conscious pain and suffering against two medical providers and their corporate employer (again, Hawthorn) based on care provided in the years 1998-2004. Vieira and Estrella remain pending.

The Fund’s complaint in case no. 08-2683 asserts four counts, two of which remain pending: counts III and IV, seeking declaratory judgment that the Fund has no obligation for defense costs until the insureds have exhausted defense coverage from MLMIC and ProMutual, respectively. The Fund’s complaints in cases no. 08-5660 and 08-5661 assert three counts, seeking declaratory judgment (count I) that the Fund is not obligated to indemnify the insureds until all other insurance is exhausted; (count II) that the Fund is not obligated to pay defense costs until all other defense coverage is exhausted; and (count III) that the Fund’s obligation is limited to a total of less than $300,000 for all claims in the underlying action, and that the Fund has no obligation to indemnify Hawthorn for the claims asserted in the underlying cases.

The medical providers all were employees of Hawthorn Medical Associates, LLC, and were all covered by insurance policies issued to that entity. The MIIX policy issued to Hawthorn and its personnel specified different retroactive dates and policy limits for individual providers.

This Court has recently issued a decision addressing this same issue in Massachusetts Insurers Insolvency Fund v. Smith, Suffolk Civil Action no. 08-3928. MLMIC is not a party to that case.

The Fund’s arguments on this point also address an issue regarding the policy limits applicable to certain providers under the HUM policy.

The Supreme Judicial Court’s recent decision in Boston Gas Co. v. Century Indem. Co., 454 Mass. 337 (2009), does not address defense costs, but it does suggest that the Court views defense costs as differing from indemnity in a manner that warrants different treatment. See id. at 366 n.38, distinguishing Emhart Indus., Inc. v. Century Indem. Co., 559 F.3d 57 (1st Cir. 2009), on the ground that Emhart involved *185 allocation of defense costs, while Boston Gas involved allocation of indemnity costs.

The Court notes that several other Superior Court decisions reached the same conclusion prior to the Supreme Judicial Court’s decision in Chesterton. See Massachusetts Electric Company v. Commercial Union Insurance, Worcester Civ. No. 99-00467B (October 28, 2005) (Kern, J.) [20 Mass. L. Rptr. 217], and cases cited at p. 4. This Court is not in a position to determine which if any of those cases involved ultimate net loss policies, although it does appear that one of the decisions cited in Massachusetts Electric Company was the decision that Chesterton reversed.