These appeals, from cases consolidated in the trial court, present a question relating to the Alabama Insurance Guaranty Association (the "AIGA"), a nonprofit organization established by the legislature to alleviate some of the financial burden imposed on claimants and policyholders by the insolvency of an insurer. Ala. Code 1975, § 27-42-2, § 27-42-6. To do this, the AIGA covers certain claims under policies issued by now insolvent insurance companies. Ala. Code 1975, § 27-42-2, §27-42-3. Thus, the AIGA provides a measure of protection where an insured, in good faith, purchased coverage, but is now effectively uninsured because of the insolvency of the insurer.
The appellants raise the issue whether the AIGA is allowed or required, by statute, to reduce or offset its payment to a claimant by subtracting the amount already received by the claimant from some other insurance policy, in a situation where the claimant has not been fully compensated.
Specifically, § 27-42-12 provides that if one first exhausts other available insurance coverage, he or she may then proceed against the AIGA as the guaranty fund for an insolvent insurer. However, this Code section (the "offset statute"), entitled "Exhaustion of rights; nonduplication of recovery," also provides that the amounts first recovered offset or reduce the "covered claim" with the AIGA. This has been construed to have a limited meaning: if recovery from the AIGA would be aduplication of amounts already recovered, the amount of the duplicated ("windfall") sums cannot be recovered from the AIGA.Alabama Ins. Guar. Ass'n v. Magic City Trucking Serv., Inc.,547 So.2d 849, 852-53 (Ala. 1989). For example, we have held that where a claimant recovers uninsured motorist ("UM") coverage because the tortfeasor's liability insurer is insolvent, the claimant cannot also recover from the AIGA on the full amount of the insolvent company's liability coverage.Alabama Ins. Guar. Ass'n v. Hollingsworth, [Ms. 1900334, June 7, 1991], 1991 WL 101543 (Ala. 1991), reh'g pending; Windle v.Alabama Ins. Guar. Ass'n, 591 So.2d 78 (Ala. 1991). In this instance, one could claim for UM coverage only because, as a result of the insurer's insolvency, there was no liabilitycoverage. To receive the full amount of both liability coverage and UM coverage would be a double recovery, and to the extent of the duplicate recovery, calculated by subtracting the UM recovery from the AIGA coverage, the AIGA's obligation for payment is offset.
In sum, we have reasoned that the legislature intended, in enacting § 27-42-12, that the claimant not be placed in a *Page 421 
better position by the insurer's insolvency than the claimant would have occupied if the insurer had been solvent. See, MagicCity Trucking Serv., Inc., 547 So.2d at 852-53. Conversely, where a claimant would not be placed in a better position by a recovery from the AIGA than the claimant would have occupied if the insolvent insurance company had been solvent, then the offset statute does not apply. Id.
Having established the legal background of these appeals, we will now address each in turn.
 Coley and Moore
On June 24, 1988, a vehicle driven by Charles Hughes, Jr., struck a vehicle driven by Bertina Coley. Alberta Coley and Patsy Moore were occupants in the Coley vehicle.
Alberta Coley died as a result of injuries received in the accident. Bertina Coley and Patsy Moore suffered substantial injuries.
At the time of the accident, Hughes was covered under a liability policy with the now insolvent Champion Insurance Company, with policy limits of $20,000 per claimant, up to a maximum coverage of $40,000 per accident.
The estate of Alberta Coley; Bertina, Coley; and Moore and her husband (the latter on a claim of loss of consortium), received out-of-court insurance settlements under various UM coverages because Hughes's liability insurer was insolvent. The amounts of these settlements were as follows: the estate of Alberta Coley received $45,000; Bertina Coley, $21,000; and Moore and her husband, $127,000. They now seek compensation from the AIGA as the guaranty fund for the insolvent liability insurer, Champion, because, they say, they have not been made "whole." The AIGA does not dispute the contention that they have not been made whole, but argues that their recoveries more than offset the $20,000 per person of Champion liability coverage the AIGA would cover. The claimants argue that the offset statute does not apply where the claimant is not made whole, because, they say, as a practical matter the AIGA payment on a claim cannot be a duplicate or "windfall" payment when one has not been made whole by previous recoveries.
The AIGA sought a declaratory judgment in the Coley/Moore case to determine whether it could offset their recoveries on UM coverage against their AIGA claim on the liability coverage. The AIGA moved for, and was granted, a summary judgment declaring that it could. The claimants argue that the trial court incorrectly applied the law to the undisputed facts.
Our review of the judgment is de novo, because no presumption of correctness attaches to a summary judgment. Hightower Co.v. United States Fidelity Guar. Co., 527 So.2d 698, 701 (Ala. 1988).
The trial court stated:
 "[A] set-off is allowed in the following situation: Victim sues Tortfeasor whose insurer is declared insolvent, an event which renders Tortfeasor uninsured. Victim makes [a] claim . . . under his UM coverage which pays the claim. Victim then claims against the Guaranty Fund [for the] Tortfeasor's insolvent insurer. In that instance, courts have held that the Guaranty Fund is entitled to a set-off because [V]ictim was only entitled to his UM coverage due to the insolvency of the [T]ortfeasor's insurer. Except for the operation of § 27-42-12, the victim would recover both his UM and the liability insurance — a windfall or duplication of recovery because [V]ictim would receive more money than he would have received had [T]ortfeasor's insurer not become insolvent."
We agree.
The question to be asked is, would payment from the AIGA to the claimant result in a windfall or a duplicate recovery of insurance proceeds previously received.[1] *Page 422 
We are sensitive to the problem faced by claimants who are not made whole by insurance settlements, but we emphasize that the legislature sought only to offer a measure of protection to remedy the problem of the nonexistence of coverage due to the insolvency of an insurer, not to redress the problem of inadequate existing coverage. Thus, the issue before us does not turn on whether the Coley/Moore claimants have been made whole.
On the Coley/Moore claims, had Champion been solvent, these claimants could have recovered from Champion only $20,000 each, not to exceed a total of $40,000 from that liability coverage. They could not have recovered the $45,000, $21,000 and $127,000 UM coverage amounts they have recovered. Thus, for the AIGA to pay monies in addition to this amount would be an impermissible windfall.
 Hamm
On May 7, 1985, Alton Earl Hamm was an occupant in a vehicle driven by Joseph Pardue, who, Hamm alleges, was intoxicated. The Pardue vehicle was involved in a collision with another vehicle.
As a result of this collision, Hamm suffered great physical injuries and was rendered an incomplete quadriplegic; that is, he has minimal feeling in his hands and is completely paralyzed from his mid-chest down.
Hamm made claims against, and settled out-of-court with, first, Pardue's liability insurer; second, the liability insurer of the bar that had served alcoholic beverages to Pardue just prior to the accident; and, finally, Hamm's own UM coverage carrier, because the driver of the other vehicle involved was uninsured. Hamm recovered a total of $150,000 on these policies.
Hamm then sought, because he had not been made whole, to recover underinsured motorist ("UIM") coverage on a policy of his father's, with the now insolvent Champion Insurance Company. The policy limit, per person, on this coverage is $20,000.
The AIGA argued that the offset statute requires that an AIGA payment on the Champion UIM coverage of $20,000 must be offset by Hamm's previous recoveries totalling $150,000, and, therefore, that the AIGA's obligation for payment is reduced to zero.
The AIGA does not dispute on appeal that Hamm's damages were at least $170,000.
Hamm sued the AIGA, alleging that the AIGA could not offset prior insurance recoveries against his claim on the Champion UIM coverage. The AIGA moved for a summary judgment. The parties stipulated to the material facts of this case, and from those facts, the trial court determined that Hamm was entitled to a judgment as a matter of law.
While the trial court reasoned in the Coley/Moore case that a duplicate recovery would have resulted absent an offset of the UM monies they had received, it reasoned that no duplicate recovery would occur by an AIGA payment in Hamm's case. The trial court stated:
 "Hamm's claim was not triggered by the insolvency of the other driver's insurer. For this reason, his situation is distinct from the cases urged by AIGA. Moreover, his claim is not a 'covered claim' within the meaning of the statute. . . . [A]llowing Hamm to recover under his UIM coverage does not place Hamm in a better position than he would have been [in] if the insurance company had remained solvent. The Court in [Alabama Ins. Guar. Ass'n v.] Magic City [Trucking Serv., Inc.,] noted that this was the policy behind the statutory scheme. Id. 547 So.2d at 852. See also Gimmestad v. Gimmestad, 451 N.W.2d 662
(Minn.App. 1990).
 "Accordingly, a recovery by Hamm would not be a duplication of the sort *Page 423 
prohibited by § 27-42-12. Hamm is not seeking a windfall or duplicate recovery. Instead, he seeks only the compensation which should have been paid to him but was delayed due to the insolvency of the UIM carrier."
We agree.
UIM coverage is a type of UM coverage that does not apply unless "[t]he sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover." Ala. Code 1975, § 32-7-23(b)(4). Stated differently, UIM coverage, by definition, does not duplicate liability coverage but is coverage in excess of liability coverage, and is available to a claimant only after the claimant has exhausted available liability coverages. It differs from typical UM coverage because UM coverage takes the place of nonexistent liability coverage. § 32-7-23(b)(1)(4). UIM coverage pays in excess ofexisting liability coverage, where the liability coverage is inadequate to fully compensate the claimant. Thus, UIM coverage, paid by the AIGA on an insolvent insurer's UIM policy, is not offset by a recovery against other liability insurance coverages, because UIM coverage does not duplicate the liability coverage. See, Alabama Ins. Guar. Ass'n v. KinderCare, Inc., 551 So.2d 286, 289-90 (Ala. 1989) (holding that an insolvent excess insurer claim against the AIGA was not subject to an offset of an insurance payment by the primary insurer, because the "coverage[s] did not overlap", i.e., duplicate).
We recognize the fact that a different result occurs under our analysis, based on the fortuity of which type of coverage the insolvent insurer provided. If the insolvent insurer provided UIM coverage, the claimant can, where a UIM claim is applicable, fully recover UIM coverage from AIGA, in additionto liability coverages available to the claimant. However, if the insolvent company issued liability coverage for the tort-feasor, a claimant can recover UM coverages available to the claimant, but cannot then recover the full amount of the insolvent insurer's liability coverage from the AIGA, irrespective of whether the claimant has been made whole. To compound the matter, a claimant who has recovered UM monies cannot make a UIM claim (the tortfeasor being deemed uninsured, not underinsured).
Nevertheless, this was clearly the intent of the legislature: that there be no duplication of recovery, irrespective of whether the claimant has been made whole. See, Ala. Code 1975, §27-42-12. As stated, the legislature's purpose in enacting the AIGA provisions was not to remedy the problem of inadequate insurance coverage, a problem not unique to the situation of insolvent insurers, but to alleviate the burden caused by a lack of coverage that occurs through no fault of the insured.
Because the trial court properly ruled on the offset issue in the Coley/Moore and Hamm cases, we affirm its judgments.
1901313, AFFIRMED.
1901314, AFFIRMED.
1901315, AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.
[1] We stress that this is the central inquiry: whether payment from the AIGA to the claimant would result in a windfall or a duplicate recovery of insurance proceeds previously received. We have examined, in addition to this central inquiry, whether insurance proceeds received from others were triggered by the insurer's insolvency, e.g., UM coverage, see Magic CityTrucking Serv., Inc., 547 So.2d at 852; whether the claimant would be in a better position by a full AIGA recovery than the claimant would have been in if the insurer had remained solvent, id. at 852-53; and whether the claim was a "covered claim" subject to offset within the meaning of the statute,Hollingsworth 1991 WL 101543 at * 2.
We note that each of these inquiries relates to the central question to be resolved.