611 So.2d 822 (1992)
J.W. HENDERSON, Plaintiff-Appellee,
v.
PACIFIC MARINE INSURANCE CO., et al., Defendant-Appellant.
No. 91-991.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1992.
Raleigh Newman, Lake Charles, for plaintiff/appellee.
Lundy & Dwight, Jerry A. Johnson, Lake Charles, for defendant/appellantNat. Union.
Brame, Berstedt, Joe Brame, Lake Charles, for defendant/appelleeL.C. Port.
Before DOUCET and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
*823 KNOLL, Judge.
National Union Fire Insurance Company (NUFIC) appeals the trial court's dismissal of its intervention claim to recoup workers' compensation benefits paid. The trial court determined that LSA-R.S. 22:1379(3)(b), as amended, applied retroactively to deprive NUFIC of its right of action for reimbursement from the Port of Lake Charles, the insured of an insolvent insurer. The sole issue presented for appeal is whether LSA-R.S. 22:1379(3)(b), as amended, applies retroactively to deprive NUFIC of its subrogation claim against the Port of Lake Charles. We find that the amendment to LSA-R.S. 22:1379(3)(b) should apply retroactively because it is interpretive or curative. Therefore, we affirm the decision of the trial court.

FACTS
J.W. Henderson filed suit on August 3, 1987, against the Port of Lake Charles and its liability insurer, Pacific Marine Insurance Company (PMIC), for injuries he sustained on August 5, 1986, in the course and scope of his employment with the Lake Charles Stevedores at the Port of Lake Charles. NUFIC intervened to recover $46,952.00 in workers' compensation benefits which it had paid to Henderson. Extracts from the PMIC insurance policy reflect liability coverage of $500,000. PMIC became insolvent and was placed into receivership for liquidation. This triggered the application of Louisiana's Insurance Guaranty Association statutes (LIGA).
On February 21, 1991, the Port of Lake Charles filed a peremptory exception of no right of action, asserting that the trial court should apply LSA-R.S. 22:1379(3)(b), as amended, retroactively. On June 19, 1991, the trial court explained orally that it dismissed NUFIC's claim because the amended statute applied retroactively to deprive NUFIC of its right of action against the Port of Lake Charles. Following the dismissal of its intervention, NUFIC appealed timely.

RETROACTIVE APPLICATION OF LSA-R.S. 22:1379(3)(b)
Louisiana Civil Code Article 6 provides that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." One caveat to this principle is that if a procedural or interpretive law operates to disturb vested rights, then the law applies prospectively only. Trans-Global Alloy v. First Nat. Bank, 583 So.2d 443, 450 (La.1991); Lott v. Haley, 370 So.2d 521, 523 (La.1979). In the case sub judice, the trial court sustained the exception of no right of action, holding that LSA-R.S. 22:1379(3)(b), as amended, should apply retroactively because it clarifies the stated purpose of the act. Thus, we must decide if the trial court correctly found that the amendment applies retroactively.
The purpose of LIGA, as announced in LSA-R.S. 22:1376, is:
"... to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer...."
The Guaranty Association Act mandates liberal interpretation of the statutes to effect the purpose as stated in LSA-R.S. 22:1376, which shall constitute an aid and guide to interpretation. LSA-R.S. 22:1378.
Under the definitional section of LSA-R.S. 22:1379(3)(b), a "`covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise." The 1990 amendment, which is the subject of this appeal, added:
"In addition, the insured of an insolvent insurer shall likewise not be liable for any subrogation claim asserted by any reinsurer, insurer, insurance pool, or underwriting association to the extent of the applicable liability limits previously provided to such insured by the insolvent insurer."
*824 The Port of Lake Charles argues that the subject amendment is curative or interpretive of the existing and stated purpose of the act, which is to protect claimants or policyholders from claims due to the insolvency of their insurers. Thus, it asserts that the statute should have retroactive application. Conversely, NUFIC asserts that the trial court erred in applying the amended statute retroactively to deprive it of a vested right to proceed against the Port of Lake Charles, an insured of an insolvent insurer. For the following reasons, we agree with the position of the Port of Lake Charles.
The stated purpose of LIGA is to protect a claimant or an insured of an insolvent insurer. NUFIC asserts that retroactive application will deprive it of a vested right of reimbursement through subrogation against the Port of Lake Charles. NUFIC, however, fails to present a situation in which jurisprudence has recognized the right of an insurance company to recover an amount through subrogation directly from an insured of an insolvent insurer. It cites Billeaudeau v. Lemoine, 386 So.2d 1359 (La.1980) and Hickerson v. Protective Nat. Ins. Co., Etc., 375 So.2d 969 (La.App. 4th Cir.1979), rev'd., 383 So.2d 377 (La. 1980) in support of its position. Both cases involved LSA-R.S. 22:1386, the non-duplication provision. However, neither case supports NUFIC's position.
In Billeaudeau, one issue was whether LIGA was entitled to a credit against its liabilities limit for any sums received by the plaintiff from its uninsured motorist carrier. The court concluded that LIGA was not entitled to a credit because such a result would thwart the purpose of LIGA which is to avoid financial loss to claimants or policyholders because of the insolvency of an insurer. Billeaudeau, supra, at 1361.
A second issue was whether the insurer, acting in the capacity of an underinsurer, could recover from the insured of an insolvent insurer. The court found that the insured of the insolvent insurer had been discharged by a settlement agreement. We agree with the appellee that any potential liability of the insured would have been only for claims exceeding coverage afforded by his insolvent insurer. Thus, the insured would be protected from financial loss from the insolvency of his insurer up to the original limits of the policy.
Furthermore, in Hickerson, the Louisiana Supreme Court found that the plaintiff was not required to exhaust her UM coverage before recovering against LIGA, which effectively would have the undesirable result of entitling the uninsured motorist carrier to reimbursement from the policyholder with an insolvent insurer. Hickerson, supra, at 379. Again the court's holding complied with the purpose of the act which is to protect policyholders of an insolvent insurer. Although neither case is completely dispositive of the issue at hand, both were consistent with the overall purpose of the act which is to protect the policyholder from delay or loss due to the insolvency of an insurer, and neither allowed an insurance company to obtain reimbursement through subrogation directly from an insured of an insolvent insurer.
NUFIC fails to refer this court to authority recognizing the right of a workers' compensation insurer to recover from an insured of an insolvent insurer whom the act was designed to protect. The right of action, which NUFIC asserts is vested, is not "absolute, complete, and unconditional, independent of a contingency ..." See, Tennant v. Russell, 39 So.2d 726, 728 (La. 1949). Rather the right is merely a hypothetical expectancy of NUFIC and, as such, does not constitute a vested right.
As the trial court noted, it would seem "rather anomalous to think that the statute would ever have been intended for a situation where the parties who are paying the premiums don't get the protection within LIGA one way or the other of the coverage that they bought." Construing the act liberally in light of the announced purpose of the act, which heavily benefits public policy, we find that this amendment was enacted to effect the existing purpose of the act. As such, it is curative and does not act to deprive NUFIC of a substantive right to an *825 action of reimbursement through subrogation against the Port of Lake Charles.
Moreover, the legislature did not intend LIGA to protect insurers which also happen to be claimants. Instead, it implicitly intended the insurance industry as a whole to bear the losses. See, Senac v. Sandefer, 418 So.2d 543, 545-46 n. 1 (La. 1982) (in which the court indicated an unwillingness to interpret LSA-R.S. 22:1379(3) in a manner which would allow a workers' compensation insurer to intervene against LIGA because that would lead to a "shuffling of funds among insurance companies"). Indeed, the legislative intent must be to place the burden of loss on the entire insurance industry rather than the insured whom the statute explicitly protects. Accordingly, we agree with the trial court that "the use of the word `claimant' in that statute at that place is referring to a noninsurance company, ... not an insurance company making a claim," and that the "philosophy of LIGA is for the insurance industry as a whole, who has the benefit of the profit side of insurance, to absorb the loss of that coverage as opposed to the insureds."
In Ursin v. Ins. Guaranty Ass'n, 412 So.2d 1285, 1290 (La.1981), the court pointed out some anomalies with the overall scheme of the act. At that time, one potential problem was the lack of a provision such as that added by the subject amendment. In Ursin, the court recognized the need for a provision which prohibits suits against the insured of an insolvent insurer by an insurer with subrogation rights. Id. This indicates that the legislature amended the statute to cure such possible anomalies in order to effect the original purpose of the act which is to protect the insured and noninsurer claimants. Additionally, the legislature added the amendment to the definitional section of the statute which had previously been expressly declared by the legislature to be remedial. This further strengthens the argument that the legislature intended the amendment to define and clarify a preexisting right of an insured to be protected from certain types of subrogation claims, and thus, to have retroactive effect.
When we consider the legislatively stated purpose of the act, we cannot reconcile NUFIC's position that the statute should not apply retroactively with the Guaranty Association Act as a whole. We must avoid a conclusion which would leave insureds at a loss because of the insolvency of an insurer. Instead, the insurance industry as a whole should bear this loss. Therefore, in liberally construing the provisions of the act to accomplish its stated purpose, we find that LSA-R.S. 22:1379(3)(b) was amended merely to rectify or clarify the preexisting law to fulfill the purpose of LIGA, which is to protect policyholders or noninsurer claimants from financial loss because of the insolvency of their insurers. Thus, LSA-R.S. 22:1379(3)(b) as amended, applies retroactively.
For the foregoing reasons, we affirm the trial court's judgment in maintaining the defendant's exception of no right of action. Costs of this appeal are assessed to National Union Fire Insurance Company.
AFFIRMED.
NOTES
[*] Judge Bernard N. Marcantel, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.