PITTMAN, Judge.
This case presents a single primary issue: whether the right of an employer to reimbursement of workers’ compensation payments made to an injured employee who has recovered damages as a result of his or her injury from a third party can properly attach when the third-party recovery is paid on behalf of the third-party tortfeasor by the Alabama Insurance Guaranty Association (“AIGA”) pursuant to the Alabama Insurance Guaranty Association Act, § 27-42-1 et seq., Ala.Code 1975 (“the Guaranty Association Act”).
The underlying facts are not in dispute. On May 5, 1999, Coston Collier (“the employee”) was injured in an automobile accident while working in the line and scope of his employment with the City of Brun-didge. At the time of the accident, the employee was 47 years old, and he had been employed with the City of Brundidge (“the employer”) for 19 years. The accident caused two vertebral disks in the employee’s neck to bulge and a disk in his lower back to herniate. Those injuries have prevented the employee from returning to work. The employee’s treating physician opined that, as a result of the employee’s injuries, the employee was permanently and totally disabled from employment. To avoid protracted litigation, the employer and the employee reached a settlement agreement whereby the employee would receive a payment every two weeks in the amount of $531.98 as workers’ compensation benefits resulting from his permanent, total disability. That settlement agreement, filed with the trial court and incorporated into a judgment, included the following language:
“Employer/Defendant, the City of Brundidge, Alabama, and/or its insurance carrier, the Municipal Worker’s Compensation Fund, Inc., and/or its worker’s comp, administrator, Millennium Risk Managers, Inc. reserve any and all rights to recover and be reimbursed for any amount of compensation benefits paid to Employee/Plaintiff on account of any recovery from any third party as a result of this accident.”
The employee’s injuries were caused when an automobile driven by Deborah Berry collided with the rear of Collier’s vehicle. The employee pursued an action against Berry. At the time of the accident, Berry was insured under an automobile-liability insurance policy issued by Reliance Insurance Company (“Reliance”); her single-incident liability limit under the policy was $1,000,000. In June 2001, Reb-anee filed for protection under Chapter 11 of the United States Bankruptcy Code. As a result of Reliance’s bankruptcy, AIGA assumed the obligations of Reliance with respect to the employee’s claim against Berry. See § 27-42-8(a)(2), Ala.Code 1975. Pursuant to the Guaranty Association Act, AIGA’s liability is capped at the amount of $150,000 per incident. See § 27-42-8(a)(l), Ala.Code 1975. Eventually, the employee accepted $124,900 from AIGA to settle his claim against Berry.
*1120 The employer and its workers’ compensation carrier, Municipal Worker’s Compensation Fund, Inc., petitioned the trial court for the award of a credit against the employer’s workers’ compensation liability in the same amount that the employee had received from AIGA.[1] The employee opposed the petition. On August 29, 2002, the trial court entered a judgment granting the employer’s petition. In its judgment, the trial court stated:
“The facts in this case are undisputed, only the proper law to be applied is at issue.
“The [employer] insists that Section 25-5-11, Code of Alabama should control while the [employee] believes that Section 27-42-5[ (4) ] prevents the [employer] from recovering against him. This Court agrees with the [employer] and believes that it and its worker’s compensation carrier are entitled to recover a refund of any benefits paid to [the employee] from April 30, 2002 to date and further are entitled to credit the balance of the [$124,900] recovered from [AIGA] on [the employer’s] liability for worker’s compensation benefits.”
Following a postjudgment motion filed by the employee, the trial court amended its judgment on October 8, 2002, to reduce the amount of the credit to $79,411.14 to reflect payment of attorney fees and expenses.[2]
The employee argues that the trial court erred in granting the employer’s petition for subrogation because the Guaranty Association Act expressly prohibits payment of any amount due “as subrogation recoveries.” See § 27-42-5(4), Ala.Code 1975. “[Bjecause the underlying facts are not disputed and this appeal focuses on the application of the law to those facts, there can be no presumption of correctness accorded to the trial court’s ruling.” Beavers v. County of Walker, 645 So.2d 1365, 1373 (Ala.1994) (citing First Nat’l Bank of Mobile v. Duckworth, 502 So.2d 709 (Ala.1987)). Moreover, a ruling on a question of law carries no presumption of correctness, and appellate review is de novo. See Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869 (Ala.1999); Ex parte Graham, 702 So.2d 1215 (Ala.1997).
The pertinent issue in this case is whether § 25-5-ll(a), Ala.Code 1975, a provision that allows an employer who has paid an injured employee workers’ compensation benefits to receive a credit if the injured employee recovers damages as a result of his or her injury from a third party, applies to payments made by AIGA in light of § 27-42-5(4), Ala.Code 1975, a provision of the Guaranty Association Act that defines a “covered claim” to exclude “any amount due any reinsurer, insurer, insurance pool, or underwriting association, as 'subrogation recoveries or otherwise.” The employee argues that § 27-42-5(4) prevents the employer and its insurance carrier from asserting a credit with respect to funds paid to the employee by AIGA rather than by the third-party tortfeasor’s insurance carrier. The employer argues that § 27-42-5(4) is merely a limitation on the power of AIGA; it contends that that statute does not apply to the employee’s third-party recovery in this case. The employer’s argument is based solely on § 25-5-11(a) and the language of the settlement agreement signed by the employer and the employee.
*1121 Generally, no contract or agreement can modify or nullify a law, but parties may agree to forgo protection of the law. See Bell v. General American Transp. Corp., 52 Ala.App. 123, 290 So.2d 184 (1973), writ quashed, 292 Ala. 708, 290 So.2d 189 (1974); Ivey v. Dixon Inv. Co., 283 Ala. 590, 219 So.2d 639 (1969). In this case, each party relies on a specific statutory provision that, each says, requires a disposition favoring that party in this dispute. If the employer is correct, the language of the settlement agreement requiring subrogation is redundant; if the employee is correct, then the provisions of the settlement agreement cannot create a right of subrogation that the Guaranty Association Act specifically prohibits. See, e.g., Derico v. Duncan, 410 So.2d 27 (Ala.1982) (citing Sunflower Lumber Co. v. Turner Supply Co., 158 Ala. 191, 48 So. 510 (1909)). Therefore, we must review both statutory provisions in order to determine whether the trial court correctly awarded the employer and its workers’ compensation carrier a credit in the amount of $79,411.14.
The employer acknowledges that its right to recover payments made to the employee by or on behalf of a third-party tortfeasor is exclusively a statutory right and does not exist independent of a statute. See Metropolitan Cas. Ins. Co. v. Sloss-Sheffield Steel & Iron Co., 241 Ala. 545, 3 So.2d 306 (1941); see also Ex parte Howell, 447 So.2d 661 (Ala.1984). Although § 25-5-ll(a) “creates a right in favor of the employer to a credit on its compensation liability” that is not subject to the equitable defenses that a true sub-rogation claim would be subject to (see 2 Terry A. Moore, Alabama Workers’ Compensation § 21.59 (1998)), statutory rights of reimbursement under workers’ compensation statutes for compensation paid are generally characterized as affording “sub-rogation” rights. See 6 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation Law § 116.01 (1997). Moreover, the Legislature, in amending § 25-5-11(a) so as to afford similar reimbursement rights as to medical and vocational benefits paid by an employer, stated that employers would “be entitled to subrogation ” for such benefits. (Emphasis added.) Therefore, we conclude that the Alabama Legislature employed the term “subrogation” in its commonly understood meaning when drafting § 27-42-5(4) of the Guaranty Association Act and that that term encompasses an employer’s right to reimbursement under § 25-5-ll(a).
We must, therefore, consider the statute establishing the employer’s right to reimbursement in light of the Guaranty Association Act, a coequal enactment of the Legislature, and we must apply the rules of statutory construction in order to determine the proper application of § 25-5-11(a) and § 27-42-5(4) in this case.
“ ‘The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ”
Ex parte Master Boat Builders, Inc., 779 So.2d 192, 196 (Ala.2000) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)); see also Smith v. Smith, 836 So.2d 893 (Ala.Civ.App.2002). It is a well-established principle of statutory construction that the law favors rational and sensible construction. See Crowley v. *1122 Bass, 445 So.2d 902 (Ala.1984); 2A Norman J. Singer, Sutherland Statutory Construction § 45.12 at 83-85 (6th ed.2000). Moreover, the Legislature will not be presumed to have done a futile thing in enacting a statute; there is a presumption that the Legislature intended a just and reasonable construction and did not enact a statute that has no practical meaning. See Ex parte Watley, 708 So.2d 890 (Ala.1997); Ex parte Meeks, 682 So.2d 423 (Ala.1996).
Whether an employer’s right to reimbursement for an employee’s third-party recovery is enforceable against a payment made by AIGA in lieu of an insolvent insurer was addressed indirectly 15 years ago in Alabama Insurance Guaranty Association v. Magic City Trucking Service, Inc., 547 So.2d 849 (Ala.1989). In that ease, the question before the Alabama Supreme Court was whether AIGA was authorized to reduce its obligation to pay under a tortfeasor’s insurance policy by the amount of workers’ compensation benefits paid to the claimant. The Court reviewed several decisions and noted that one of the stated purposes of insurance-guaranty associations is to avoid financial loss to claimants or policyholders because of the insolvency of an insurer; moreover, our Supreme Court noted that the nondu-plication provisions of guaranty-association statutes operate to prevent windfall judgments so that a claimant does not obtain a greater recovery than he or she would have received had the tortfeasor’s insurance company remained solvent. 547 So.2d at 852.
In discussing the applicable law, our Supreme Court quoted Ferrari v. Toto, 9 Mass.App.Ct. 483, 402 N.E.2d 107 (1980), aff'd, 383 Mass. 36, 417 N.E.2d 427 (1981),[3] in which the Massachusetts Insurance Insolvency Fund (“the Fund”), that state’s equivalent of AIGA, was excused from paying an otherwise payable claim where the payment would ultimately benefit an insurance company rather than an injured citizen:
“The [Ferrari ] court noted: ‘We are of the opinion that the Fund is excused from paying claims if the ultimate beneficiary is an insurance company.’ 9 Mass.App.Ct. at 486, 402 N.E.2d at 109. Alabama law is in agreement: Section 27-42-5(4) expressly states: ‘ “Covered claim” shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.’ ”
547 So.2d at 853.
In concluding that AIGA was not entitled to reduce its obligation to a claimant by the amount paid to that person as workers’ compensation benefits, our Supreme Court also noted that workers’ compensation benefits were provided to the employee because the injury occurred at work, not because the tortfeasor’s insurer was insolvent; therefore, the nonduplication or offset provision did not apply.[4] In reaching that conclusion, our Supreme Court reviewed several court decisions discussing related issues from Louisiana and Pennsylvania, whose insurance-guaranty statutes are nearly identical to ours.
In addition to considering our Supreme Court’s decision in Magic City, this court has reviewed numerous decisions interpreting statutes that contain the same lan *1123 guage as the definition of “covered claim” in the Guaranty Association Act. In each of those cases, the fundamental principles of statutory construction required a comparison of the pertinent state’s insurance-guaranty statute in light of that state’s workers’ compensation subrogation provisions.
In Henderson v. Pacific Marine Insurance Co., 611 So.2d 822 (La.Ct.App.1992), the appellate court was asked to interpret the Louisiana insurance-guaranty statute as it relates to subrogation claims. One part of the Louisiana insurance-guaranty statute that is identical to the Guaranty Association Act’s definition of a “covered claim” reads “ ‘[a cjovered claim’ shall not include any amount due any ... insurer ... as subrogation recoveries or otherwise.” La.Rev.Stat. Ann. § 22:1379(3)(b)(West 2003); compare § 27-42-5(4), Ala.Code 1975. The Louisiana court concluded that that state’s legislature did not intend that statute to protect insurers that also happen to be claimants. That court concluded:
“Indeed, the legislative intent must be to place the burden of loss on the entire insurance industry rather than the insured whom the statute explicitly protects. Accordingly, we agree with the trial court that ‘the use of the word “claimant” in that statute ... is referring to a noninsurance company, ... not an insurance company making a claim.’ ”
611 So.2d at 825. More recently, the Connecticut Supreme Court concluded that a workers’ compensation carrier’s claim against the Connecticut equivalent of AIGA was not a “covered claim.” See Himnihan v. Mattatuck, Mfg. Co., 243 Conn. 438, 705 A.2d 1012 (1997).
In Harris County v. Williams, 981 S.W.2d 936 (Tex.App.1998), a Texas court reviewed insurance-guaranty and workers’ compensation statutes that are substantially similar to Alabama’s relevant statutes. While recognizing that usually a workers’ compensation carrier is entitled to subro-gation pursuant to statute, the Harris County court also noted that the Texas insurance-guaranty statute specifically excluded from the definition of a “covered claim” any amount due any insurer for a subrogation recovery asserted by an insurer. The Texas court noted that the purpose of that state’s insolvency fund was “to provide additional protection to insureds and liability claimants of impaired insurers” and reasoned that that purpose “would be frustrated if a statutory right of subrogation were allowed to deplete the Fund’s resources.” 981 S.W.2d at 939 (internal citations omitted).
Interpreting similar statutory language, an appellate court in Missouri held that the workers’ compensation subrogation provision is limited to cases where the insurer is solvent. The Missouri Court of Appeals held, in construing that state’s workers’-compensation subrogation statutes concurrently with the state’s insurance-guaranty statute, that those statutes were to be read “harmoniously,” holding “that the general right of subrogation in [the workers’ compensation statute] is limited to cases where the insurer is solvent”; therefore, no recovery was allowed from moneys paid by the insurance-guaranty fund. Garrett v. Overland Garage & Parts, Inc., 882 S.W.2d 188, 193 (Mo.Ct.App.1994). In the case of an insolvent insurer, the Missouri appellate court held, “the injured worker cannot recover the amount that would be the subject of a subrogation claim. Therefore, the compensation carrier has no cause of action against the injured worker because there is no recovery of [that] award as a matter of law.” Garrett, 882 S.W.2d at 193.
We have also reviewed cases from Pennsylvania and Rhode Island, both of which have similar provisions in their insurance- *1124 guaranty statutes defining payable claims so as to exclude claims that will ultimately benefit a solvent insurer. Those decisions addressed various attempts by solvent insurers to recover moneys paid either directly from the insolvency fund or through subrogation of a claimant’s payment from the fund. For example, in Pennsylvania, a court held that the state’s insurance-guaranty statute superseded the subrogation provisions of that state’s workers’ compensation act. See Cullen v. Pennsylvania Prop. and Cas. Ins. Guar. Ass’n, 760 A.2d 1198 (Pa.Commw.Ct.2000). Finally, the Supreme Court of Rhode Island, applying traditional rules of statutory construction, interpreted that state’s statutory exclusion of any amount due an insurer “as subrogation recoveries or otherwise” from the definition of a “covered claim” under Rhode Island’s insurance-guaranty law. That court concluded that the plain meaning of such a provision “limiting the fund’s statutory authority to the paying of only covered claims” specifically excluded reimbursements to solvent insurers as well as subrogation recoveries. See McGuirl v. Anjou Int'l Co., 713 A.2d 194, 199 (R.I.1998).
The New Jersey Superior Court, in deciding a case that was procedurally similar to this case, concluded that a workers’ compensation carrier could not attach a lien for reimbursement of benefits under the enabling statute of New Jersey’s insurance-guaranty fund. In that case, after the employee had settled a third-party claim and had received $125,000 from the New Jersey insurance-guaranty fund, the employer and its workers’ compensation carrier sued the employee for reimbursement of the benefits it had paid while the employee pursued his third-party claim. The appellate court stated, in pertinent part:
“[W]e are satisfied that irrespective of whatever the technically correct characterization of the nature of the workers’ compensation carrier’s claim may be, whether lien, subrogation right, [right of reimbursement,] or a hybrid ... it is ultimately, functionally and conceptually, within the statutory intendment of a claim arising by subrogation or otherwise. ...
“... [UJnlike the typical subrogation situation in which a unitary claim is involved, the compensation lien, at least where the third party recovery exceeds the compensation benefits paid, does not attach to and is not congruent with the injured worker’s common-law claim against the tortfeasor.... But [as to the amount normally credited as an offset or for reimbursement] ... [w]e conclude that it is not a covered claim based both on the verbiage and the public policy of the Guaranty Fund Act. First, of course, the lien of the compensation carrier is, literally, an ‘amount due any insurer ... as subrogation recoveries or otherwise.’ ... :
“More significant, however, is the public policy sought to be advanced by the Guaranty Fund Act. In effect, the legislative purpose of protecting policyholders of and claimants against insolvent insurers is accomplished at the direct cost of all of the policyholders of the member insurers, whose premium surcharges finance the Association’s operation and expenses.... It is clearly one thing to charge the policyholders of solvent member insurers with the financial obligation of protecting the policyholders of insolvent carriers.... But it is quite another thing to charge the ‘solvent’ policyholders not only with paying the claims as to which they, as a group, are themselves at risk but also the direct claims of other insurance companies. Thus, the essential design of the Guaranty Fund Act is immediately evident. *1125 Policyholders of solvent property and liability insurers pay only for the protection lost by similarly-covered policyholders of insolvent insurers, and the insurance industry itself bears the risk of loss of its own direct claims against the insolvent carrier, which they may, however, make against the insolvent carrier’s receiver.
“We see no reason why the reimbursement claim of a workers’ compensation insurer should not be classified as that of an insurance industry creditor or why its burden should be borne by the policyholders of solvent ... insurers.”
Sussman v. Ostroff, 232 N.J.Super. 306, 312-14, 556 A.2d 1301, 1304-05 (App.Div.1989) (footnote omitted).
Similarly, a Massachusetts appellate court recently addressed the issue of an employer’s right to reimbursement or an offset for future medical expenses and compensation benefits that may be paid from an employee’s settlement from that state’s insurance-guaranty fund. See In re Dufresne’s Case, 51 Mass.App.Ct. 81, 743 N.E.2d 850 (2001). In that case, an employee who had been injured at work and had been receiving temporary workers’ compensation benefits for a partial disability at the time he settled his third-party claim, later became totally disabled. At that time, the employer and its workers’ compensation carrier sued the employee and sought permission to apply the remaining amount from the settlement of the third-party claim as an offset against the employee’s future medical expenses and compensation benefits. In declining to allow the employer and its workers’ compensation carrier to receive an offset against future expenses, the Massachusetts court concluded:
“As between [the workers’ compensation carrier] and the [insurance-guaranty] Fund, ‘the loss must be absorbed by the workmen’s compensation insurer.’ In other words, ‘the design of the Fund [is] to indemnify injured persons, but not the insurance industry.’ [The workers’ compensation carrier’s argument that the necessary avoidance of double recovery by the employee requires judgment in its favor comes to nothing.”
51 Mass.App.Ct. at 88-89, 743 N.E.2d at 855 (internal citations omitted).
We conclude, based on our Supreme Court’s decision in Magic City, supra, on the other authorities cited above, and on general principles of statutory construction, that the definition of “covered claim” in § 27-42-5(4) specifically prevents the employer in this case from receiving a credit for workers’ compensation benefits that are or will be paid.
The employer also argues that AIGA was not created to place an injured party, such as the employee, in a better position than if the third-party insurer had remained solvent.[5] Moreover, we are not convinced that an employee who is admittedly permanently and totally disabled as a result of an automobile collision with a third-party tortfeasor is placed in a “better position” when the insurer with $1,000,000 in potential coverage becomes insolvent, leaving that employee with only a potential recovery of $150,000 after AIGA has stepped into the insurer’s shoes. That said, because the Guaranty Association Act expressly prohibits payment of any amount due “as subrogation recoveries,” such as payments reimbursing employers *1126 or workers’ compensation insurers under § 25-5-ll(a), an injured employee may appear to have received a windfall. Obviously, if AIGA had properly brought the workers’ compensation carrier into the third-party - claim, as happens in most cases, the carrier would not be entitled to receive reimbursement for the médical expenses and compensation benefits paid on the employee’s behalf; AIGA simply would have never made a payment at all. However, to allow an insurer, such as the employer’s workers’ compensation carrier in this case, to reap the ultimate benefit of an AIGA payment would violate the core principles upon which AIGA was established: (1) making injured individuals whole despite an insurer’s insolvency and (2) shifting the loss to the entire insurance industry for any insurer’s insolvency. Compare Alabama Ins. Guar. Ass’n v. Hamm, 601 So.2d 419 (Ala.1992) (holding that insured was entitled to collect underinsured-motorist insurance without a setoff from other liability-insurance coverages because the policies covered different risks).
Moreover, we note that our Legislature addressed concerns that for future medical expenses and compensation benefits that may be paid AIGA might require assistance to remain solvent and substantially revised the Guaranty Association Act during its 2000 session. “It is an ingrained principle of statutory construction that ‘[t]he Legislature is presumed to be aware of existing law and judicial interpretation when it adopts a statute. Ex parte Louisville & N.R.R., 398 So.2d 291, 296 (Ala.1981).’ ” Ex parte Fontaine Trailer Co., 854 So.2d 71, 83 (Ala.2003) (quoting Carson v. City of Prichard, 709 So.2d 1199, 1206 (Ala.1998)). It is also a settled rule that in adopting statutes and amendments thereto “ ‘ “the Legislature is presumed to have known the fixed judicial construction pre-existing statutes had received, and the substantial re-enactment of such statutes is a legislative adoption of that construction.” ’ ” Ex parte Fontaine Trailer Co., 854 So.2d at 83 (quoting Wood-Dickerson Supply Co. v. Cocciola, 153 Ala. 555, 557, 45 So. 192, 192 (1907), quoting in turn Morrison v. Stevenson, 69 Ala. 448, 450 (1881)). Moreover, “ ‘[i]t is a familiar principle of statutory interpretation that the Legislature, in enacting new legislation, is presumed to know the existing law.’ ” Ex parte Fontaine Trailer Co., 854 So.2d at 83 (quoting Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 297 (Ala.1998)). Nothing in the 2000 amendments to the Guaranty Association Act suggests that the Legislature was attempting to change the effect of our Supreme Court’s interpretation in Magic City of the provision excluding subrogation claims from the definition of “covered claims” under the Guaranty Association Act. The Legislature specifically did not create an exception for reimbursement of benefits paid under the Workers’ Compensation Act, and we decline to judicially create such an exception here.
Having reviewed the Guaranty Association Act as well as the principal judicial decision of our Supreme Court interpreting the provisions of that Act and decisions from states that have legislation containing nearly identical language, we conclude that the controlling law requires us to reverse the trial court’s judgment and remand the cause, for entry of a judgment denying the employer’s request for subrogation in this case. That said, we offer no further comment on the obvious tension that can arise when the policy considerations underlying § 25-5-11 and § 27-42-5(4) come into conflict, as in this case; that is an area best left to the Legislature, which has the sole power to amend or repeal either or both statutes.
REVERSED AND REMANDED WITH INSTRUCTIONS.
*1127 YATES, P.J., and THOMPSON, J., concur.
MURDOCK, J., dissents, with writing, which CRAWLEY, J., joins.

. Municipal Worker's Compensation Fund, Inc., is not a party to this appeal.

. Although the amount in controversy exceeds $50,000, exclusive of interest and costs, we have exercised jurisdiction based upon the nature of the dispute between the parties, which involves workers' compensation benefits. See § 12-3-10, Ala.Code 1975.

. The Massachusetts courts continue to follow the principle that that " 'Fund [exists] to indemnify injured persons, but not the insurance industry.’ " Massachusetts Insurers Insolvency Fund v. Ladd, 39 Mass.App.Ct. 553, 558, 658 N.E.2d 696, 699 (1995) (quoting Ferrari, 9 Mass.App.Ct. at 487, 402 N.E.2d at 110).

. A similar conclusion was reached in Alabama Insurance Guaranty Association v. Hamm, 601 So.2d 419 (Ala.1992).

. We agree that generally the workers’ compensation statutes operate to prevent an injured employee from receiving a "double recovery” for a workplace injury. The facts in this case put that policy consideration squarely in opposition to the policy considerations that underpin the Guaranty Association Act.