MURDOCK, Judge,
dissenting.
Section 27-42-5(4), Ala.Code 1975, a provision of the Alabama Guaranty Association Act, operates to relieve the Alabama Insurance Guaranty Association (“AIGA”) of responsibility for paying “any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.” My dissent is based on two observations regarding this provision.
First, this provision is a restriction on payments by AIGA to insurance companies and related organizations. No such payment was made by AIGA in the present case. Instead, AIGA made a payment directly to the injured employee. Nothing in the statute prevents an employer (or other third party) from seeking reimbursement or “subrogation” from an amount already paid to a claimant by AIGA or from any other moneys that may come into the possession of the claimant. The plain meaning of the statute, therefore, supports the judgment of the trial ■ court. See IMED Corp. v. Systems Engineering Assocs. Corp., 602 So.2d 344 (Ala.1992).
Second, the purpose of § 27-42-5(4) is to protect the financial reserves of AIGA from solvent insurers . so that those reserves will be available to aid the policyholders of insolvent insurers. This1 case, however, involves a payment that has already been made by AIGA. No ruling by this court will make that payment recoverable by AIGA. Denying the employer its reimbursement and subrogation rights would be at odds with the Workers’ Compensation Act, without advancing the policy objectives of the Guaranty Association Act.' ’
In this regard, it is important to recognize that in every one of the cases from other states cited in the main opinion in support of the result reached therein, the guaranty association was asserting its right not to make the payment at issue.[6] In each of those cases, it was the guaranty association that was appropriately asserting its right, under the applicable statutes, *1128 to protect its reserves. It was the guaranty association in each of those cases that had the standing to assert its rights under the statute.
Even the opinion of a three-judge panel of the appellate division of the Superior Court of New Jersey described in the main opinion as “procedurally similar” to the present case, Sussman v. Ostroff, 232 N.J.Super. 306, 556 A.2d 1301 (App.Div.1989), is distinguishable from the present case. In Sussman, before the guaranty association agreed to any settlement on behalf of the third-party tortfeasors, both it and the injured employee took the position that whatever the outcome of the employee’s claim against the guaranty association the employee’s recovery would not be subject to subrogation or reimbursement rights of the employer’s workers’ compensation carrier. After a settlement was reached between the employee and the guaranty association, but before any funds were paid out by the guaranty association, the employee filed a motion seeking the trial court’s guidance as to the proper disposition of the settlement proceeds as between the employee, the workers’ compensation carrier, and the guaranty association. Consistent with the position that the employee and the guaranty association had both taken before reaching a settlement, and in an effort to enforce the settlement they had reached, both the employee and the guaranty association argued to the trial court that none of the settlement funds should be paid by the guaranty association to the workers’ compensation carrier. Both in its articulation of the issue presented and in its ultimate holdings, the New Jersey court rendered a decision that, in my view, is more supportive of my position in the present case than it is of the position outlined in the main opinion.
First, as to the issue presented, the New Jersey court stated:
“The primary issue posed by this appeal is whether the statutory workers’ compensation lien for benefits paid to an injured employee by his employer’s compensation insurer is enforceable against the Guaranty Association when it undertakes the defense and indemnification of the tortfeasor whose negligence caused the employee’s injury and whose own liability carrier has become insolvent.”
282 N.J.Super. at 308, 556 A.2d at 1301-02 (emphasis added). The court also outlined the contents of letters exchanged by the guaranty association and the employee taking the position that the workers’ compensation lien would not be honored by the guaranty association and that “ ‘there can be no recovery for [the employee’s] Workers’ Compensation payments from the funds under the guaranteed fund.’ ” 232 N.J.Super. at 308-09, 556 A.2d at 1302.
Second, the New Jersey court held that the employee should not have the opportunity to obtain a double recovery:
“We are therefore convinced that the legislatively mandated interrelationship between the workers’ compensation insurer, the Guaranty Fund, and the injured worker is simply this. The injured worker may not obtain a double recoveryA
232 N.J.Super. at 314-15, 556 A.2d at 1305 (emphasis added). Further, because the obligation of the guaranty association to the employee was resolved by way of a settlement agreement, rather than a court judgment, the New Jersey appellate court remanded the case for findings that could have led to the guaranty association’s not being obligated to pay all of the agreed-upon settlement amount to the employee due to the pendency of the claim against those funds by the workers’ compensation insurer. 232 N.J.Super. at 315-16, 556 A.2d at 1306.
*1129 In the present case, however, the guaranty association is not even a party to the litigation. It has already made the payment for which the statute arguably provides it protection. It could have objected to making the payment, moved to join the workers’ compensation insurer as a party, and otherwise asserted its rights under the Guaranty Association Act, as did the guaranty associations in Sussman and the other cases relied upon by the main opinion. It did not. Instead, it voluntarily made the payment at issue, and it is not in any way seeking to recover that payment and no longer has a real interest in this litigation. Instead, it is the employee in the present case that is attempting to utilize the Guaranty Association Act for his own purpose. The Guaranty Association Act was not written for that purpose and, by its terms, does not provide for the result reached in the main opinion. I therefore respectfully dissent.
CRAWLEY, J., concurs.

. In Alabama Insurance Guaranty Association v. Magic City Trucking Service, Inc., 547 So.2d 849 (Ala.1989), the primary Alabama case cited in the main opinion, our Supreme Court stated the issue as "whether the Alabama Insurance Guaranty Association Act ... permits the Guaranty Association to reduce its obligation ... by the amount of workmen’s compensation benefits paid to the claimant.” 547 So.2d at 850. The portion of the main opinion in Magic City addressing that issue was concurred in by only four Justices, with a fifth Justice concurring in the result. Moreover, the main opinion in Magic City reasoned that AIGA was not entitled to reduce its obligation to a claimant by the amount paid to the claimant as workmen’s compensation benefits. Accordingly, the main opinion in Magic City is, in my opinion, consistent with my view in the present case in that (1) Magic City is a case in which the guaranty association was asserting its rights to avoid a payment under the Guaranty Association Act, whereas in‘the present case the guaranty association .is not even a party to the litigation and has already made a payment in the full amount of its obligation under the Guaranty Association Act without any claim for reduction, and (2) the opinion issued by the Supreme Court in Magic City.indicates that the claimant’s medical expenses that were at issue therein were "not 'insurance benefits' available to the Guaranty Association to offset against the [insured’s] claim.” Id. at 853. Further, the question of the employer’s or workers’ compensation insurance carrier’s right to be subrogated to the claimant’s recovery of insurance benefits from AIGA was not presented in Magic City.
In addition, I believe the case of Alabama Insurance Guaranty Ass’n v. Hamm, 601 So.2d 419 (Ala.1992), cited in note 4 of the main opinion, is inapposite.